692 F.2d 924
 Jack SHADIS, Belle Feinberg, Marie Burton, Individually and
on behalf of all other persons similarly situated
v.
Frank BEAL, Individually and as Secretary of the Department
of Public Welfare, Commonwealth of Pennsylvania, Wilbur E.
Hobbs, Individually and as Deputy Secretary the Department
of Public Welfare, Southeastern Region, Commonwealth of
Pennsylvania, Leo A. Sullivan, Individually and as Welfare
Policy Specialist, Office of Basic Family Maintenance,
Department of Public Welfare, Southeastern Region,
Commonwealth of Pennsylvania, Don Jose Stovall, Individually
and as Executive Director of the Philadelphia County Board
of Assistance, Helen Hyde, Individually and as Director of
Operations, Philadelphia County Board of Assistance, June
Reed, Individually and as District Supervisor, Medical
Assistance District Office, Philadelphia County Board of
Assistance, Cynthia Anderson, Individually and as Assistant
District Supervisor, Medical Assistance District Office,
Philadelphia County Board of Assistance, Mildred Davis,
Individually and as Assistant District Supervisor, Medical
Assistance District Office, Philadelphia County Board of
Assistance, and Aurelius Robertson, Individually and as
Casework Supervisor, Medical Assistance District Office,
Philadelphia County Board of Assistance, William Harden,
"John Doe", John Grady, Appellants.
 No. 82-1044.
 United States Court of Appeals,
Third Circuit.
 Argued July 20, 1982.
Decided Nov. 10, 1982.
 
 Maria Parisi Vickers, Deputy Atty. Gen., Philadelphia, Pa., for appellants.
 Susanna E. Lachs, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for appellees.
 Before ADAMS and HIGGINBOTHAM, Circuit Judges, and TEITELBAUM, District Judge.
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
 
 
 1
 In this case, we are asked to review the award of $51,330.00 in attorney's fees to Carolyn Daffron, who, while serving in the capacity of a consultant for Community Legal Services, participated in the successful settlement of a civil rights litigation against the Commonwealth of Pennsylvania. The Commonwealth challenges the propriety of an award to any attorney other than Community Legal Services but concedes that, if an award to Ms. Daffron is appropriate under the Civil Rights Attorneys' Fees Award Act of 1976, 42 U.S.C. Sec. 1988 (the "Act"), the amount awarded by the district court is reasonable. We have concluded that Ms. Daffron is entitled to an award of attorney's fees under the Act and we will, therefore, affirm the Memorandum and Order of the district court.
 
 I.
 
 2
 On November 26, 1975, Community Legal Services filed a class action complaint against the Commonwealth's Secretary of the Department of Welfare and other named state and local officials alleging that the defendants violated due process by terminating medicaid benefits for a large class of recipients without prior notice or the opportunity for a hearing. The complaint also alleged that the defendants were operating the medicaid program under illegally low eligibility levels in conflict with the Social Security Act and binding federal regulations promulgated by the then Department of Health, Education and Welfare. The case was eventually settled after a considerable delay and difficulty caused largely by the Commonwealth's unwillingness to correct obvious constitutional and statutory abuses.
 
 
 3
 Community Legal Services and Carolyn Daffron filed a consolidated Motion for an Award of Attorneys' Fees on July 25, 1980. The motion sought an award of $280,756.58 for Community Legal Services and $175,950.00 for Ms. Daffron. The district court in a Memorandum and Order, reported at 520 F.Supp. 858 (E.D.Pa.1981), decided that the Commonwealth's effort to immunize itself from an award of attorneys' fees to Community Legal Services by inserting contractual provisions into the annual funding contracts it issued to the Pennsylvania Legal Services Center, which in turn subcontracted the work in this litigation to Community Legal Services, was void as against public policy.[1]
 
 
 4
 The district court then scheduled a hearing on the issue of Ms. Daffron's entitlement to an award of attorney's fees. The court, after conducting a hearing, found that Ms. Daffron was employed as an attorney by Community Legal Services when the Shadis litigation was begun. However, in May of 1978, Ms. Daffron resigned from Community Legal Services for personal reasons. A few months later as the Shadis litigation approached a scheduled trial date the remaining Community Legal Services attorneys on the Shadis case realized that they needed additional attorney help. Ms. Daffron was approached and, with the approval of the Director of Community Legal Services, was offered a consultant contract to resume working on the case. She was not rehired as a staff member, but rather, was paid an hourly wage.[2] Community Legal Services did not seek attorney's fees for any hours expended by Ms. Daffron after she resigned in May of 1978.
 
 II.
 
 5
 The only issue presented by this appeal is whether the district court erred in granting Ms. Daffron's independent motion for attorney's fees for her services as a consultant to Community Legal Services. The Commonwealth contends that only Community Legal Services is entitled to recover attorneys' fees because only it had an attorney-client relationship with the plaintiffs. In short, their argument is that as a consultant Ms. Daffron maintained a relationship only with Community Legal Services and not with the class. In its brief, the Commonwealth acknowledges that "it is undisputed that Ms. Daffron is a lawyer who has provided services, legal in nature, which ultimately have accrued to the plaintiff class ...." Appellants' Brief at 4. Further, at oral argument, counsel for the Commonwealth conceded that Community Legal Services could have sought an award that included the services rendered by Ms. Daffron as a consultant after she had resigned. Despite its concession that Ms. Daffron functioned as a lawyer for the class and contributed valuable services to the class, the Commonwealth contends that only the attorney of record could petition for Ms. Daffron's labors and then only "as a consultant at a rate of $20 per hour ...." Transcript of Oral Argument at 5.
 
 
 6
 We reject, as did Judge Newcomer in his district court opinion, so narrow a view of the relationship which Ms. Daffron had with Community Legal Services and with the plaintiff class. The district court found as a matter of fact that Ms. Daffron and Community Legal Services agreed "that [Ms. Daffron] would seek fees separately, and that she would repay CLS for the money paid under the consulting agreement." App. at 45a-46a.[3]
 
 
 7
 This case is complicated by the fact that when Ms. Daffron returned to the services of Community Legal Services as a consultant she did not enter a new appearance on the record as an independent counsel. If Ms. Daffron and Community Legal Services intended Ms. Daffron to petition for attorney's fees separately, it would have been much simpler for her to have entered an appearance on the record as co-counsel for the plaintiffs' class.[4] This would have obviated the Commonwealth's argument that only Community Legal Services had an attorney-client relationship with the plaintiff class. Nevertheless, we do not believe the district court was clearly erroneous in concluding that Ms. Daffron served as an "independent counsel to the class." App. at 47a. At the point which Ms. Daffron became a consultant to Community Legal Services, she was clearly not an employee within the usual meaning of the term. She continued to serve as counsel to the class and unquestionably provided valuable legal services to the class. To permit the Commonwealth to avoid paying the attorney's fee for Ms. Daffron's work simply because a formal change in the entry of appearance was not made, would be contrary to the policies and objectives of the Act.
 
 
 8
 As Judge Hunter wrote in the first Shadis appeal,
 
 
 9
 An important aspect of the enforcement scheme designed by Congress is the collection of attorneys' fees from the states when states are losing defendants. It is clear that Congress contemplated that states and state officials would often be the targets of civil rights actions:
 
 
 10
 [D]efendants in these [civil rights] cases are often state or local bodies of state or local officials. In such cases, it is intended that attorneys' fees, like other items of costs, will be collected either directly from the official, in his official capacity, from funds of his agency or under his control, or from the state or local government (whether or not the agency or government is a named party).
 
 
 11
 S.R. No. 94-1011, [94th Cong., 2d Sess. 2, reprinted in [1976] U.S.Code Cong. & Admin.News, pp. 5908, 5913] (footnotes omitted).
 
 
 12
 At 831. In this case, consistent with its agreement with Ms. Daffron, Community Legal Services did not seek attorney's fees for her work after May 1978.[5] If the Commonwealth's theory were to prevail, the result, given the settlement of attorneys' fees with Community Legal Services, would be a windfall to the Commonwealth because no one would be able to petition for attorney's fees for Ms. Daffron's services rendered between 1978 and 1980. Ms. Daffron expended approximately 915 hours after resigning from Community Legal Services in the prosecution of this civil rights suit. To permit the Commonwealth to avoid compensating her for fulfilling the important function of actively pursuing this litigation would be wrong as a matter of law and equity.
 
 III.
 
 13
 For the foregoing reasons, we will affirm the Judgment and Order of the district court.
 
 
 
 [1]
 The state appealed the district court's Order and a panel of our court rejected the State's arguments concluding that,
 [i]f the Commonwealth could insert and enforce the no fees restraints in its contracts, the policy of economic inducement sought by Congress would be severely impaired. Legal service programs for the poor would have both less incentive and ability to bring civil rights suits against the Commonwealth. Thus, one of the most important types of private attorneys general would be significantly less willing to pursue civil rights litigation against the state.
 Shadis v. Beal, 685 F.2d 824 (3d Cir.1982), at 832. The Commonwealth subsequently settled the amount of attorneys' fees it would pay to Community Legal Services.
 
 
 [2]
 Ms. Daffron received none of the fringe benefits received by Community Legal Service attorneys. She did not have an office, a weekly, monthly or yearly salary, and was not available for assignment to cases other than Shadis
 
 
 [3]
 Our affirmance of the district court's award is specifically contingent upon Ms. Daffron repaying any money paid to her pursuant to her hourly wages under the consultant agreement with Community Legal Services. We assume that the Commonwealth will either send separate checks, one to Community Legal Services reimbursing the amount it has paid to Ms. Daffron under the consultation agreement and a separate check to Ms. Daffron alone for the balance, or in the alternative, that the Commonwealth will issue a check jointly to Community Legal Services and Ms. Daffron. This consultation agreement seems somewhat ambiguous and hopefully counsel in the future will execute in advance a written contract which details any terms relating to attorneys' fees. Ms. Daffron and Community Legal Services never had a written agreement covering the issue as to whether she could be compensated for her services beyond that granted under the consultation hourly rate. See exhibits 3 and 4, 281-82a. The consultation arrangements were memorialized however, as evidenced by memoranda from Douglas G. Dye, the lead counsel to Ernest E. Jones, the Deputy Director of CLS. Though the record is replete with statements in affidavits as to what was the "arrangement" or "understanding" of Ms. Daffron and C.L.S., there was never an executed written contract between Ms. Daffron and CLS. See affidavits of Ms. Daffron--25a, p 2; affidavit of Ernest E. Jones: "It was our understanding that in the event [p]laintiffs were the prevailing party, Ms. Daffron would apply independently to the court for an award of a reasonable attorney's fee." 31a (emphasis added)
 Though we express no opinion favoring oral agreements or "understandings" whereby a public interest law firm guarantees a minimum hourly rate to a consultant and permits the consultant to seek separately counsel fees as an attorney for the same class which the public interest firm also represents, we find the following analysis of Judge Newcomer persuasive:
 The Court finds that Daffron was an attorney for the class. In the initial fee petition CLS might have sought compensation for all of her time, if she had been a CLS employee, for the time was certainly expended and CLS would have been entitled to a sum representing the value of that time. CLS did not, however, claim for the time spent by Daffron after August, 1978, and indeed, consolidated its motion papers with hers. Because the legal services were rendered and have not been sought elsewhere, it is only logical to conclude that Daffron is entitled to seek them directly.
 Two events have complicated this relatively simpl[e] conclusion. The first is that CLS has settled independently with the Commonwealth, although the Commonwealth has not argued that the settlement specifically included Daffron's claim. The second is, apparently, some reconsideration on the part of Ernest Jones [Executive Director of Community Legal Services] about the wisdom of permitting Daffron to apply separately for attorney[s] fees. A reasonable inference from a reading of Defendant's Exhibit Four is that there was considerable disgruntlement among CLS staff attorneys when they learned of Daffron's separate application. Whatever private complications might develop, however, the Court can perceive no benefit in denying an attorney for the class a fair and reasonable award that is authorized by the statute.
 App. at 46a-47a.
 
 
 [4]
 Ms. Daffron entered an appearance along with two other attorneys from Community Legal Services at the start of the litigation while she was still an employee of Community Legal Services
 
 
 [5]
 Our court favors a unitary award of attorneys' fees wherever possible. The issues in this appeal also could have been avoided if Community Legal Services had sought a unitary award which included Ms. Daffron's time and then reimbursed her
 When the prevailing party is represented by more than one attorney, it is important that the district court be able to make a unitary determination of the fee award. Since the reasonableness of one application will often depend upon the fees and hours set forth in the other application or applications, it is crucial that these petitions be presented in a manner which will enable the court to evaluate properly both the individual and the total fees requested. Thus, while it may be permissible for multiple attorneys to file independent requests for fees, the filings should be coordinated so that the requests are all included in a single motion or that the separate motions are presented in some cohesive fashion. This will insure both that all requests are given proper consideration by the court, and that the opposing party has an adequate opportunity to challenge the awards.
 The federal courts are being required to devote an ever-increasing portion of their time to requests for attorneys' fees. There is a danger that this type of controversy will overshadow the underlying civil rights claims that these lawyers were retained to vindicate. Thus, any procedure that helps to place fee claims in their proper perspective and reduces the time that a court must spend on them, may enable the judiciary to allocate more of its time to the merits of the various claims pending in the courts, rather than to the fee requests attendant on them.