**George S. JONAS, et al.,**
**Plaintiffs-Appellants,**

v.

**Edward J. STACK, etc., et al.,**
**Defendants-Appellees.**

No. 83–5390.

United States Court of Appeals,
Eleventh Circuit.

April 19, 1985.

Green, Eisenberg & Cohen, James K. Green, West Palm Beach, Fla., David M. Lipman, Miami, Fla., for plaintiff's attorney Andrew Mavrides.

Price & Bryne, Alexander Cocalis, Chief Trial Counsel, Fort Lauderdale, Fla., for defendants-appellees.

Before TJOFLAT and VANCE, Circuit Judges, and ATKINS *, District Judge.

* Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

VANCE, Circuit Judge:

This appeal requires us to determine whether an attorney who successfully prosecutes another attorney's application for fees under the Civil Rights Attorneys' Fees Awards Act (Act), 42 U.S.C. § 1988, may thereupon request compensation for his own services under the same statute. Although we conclude that such representation constitutes a service which may be compensable within the meaning of the Act, we also conclude that the award may be made only to counsel who actually represented the prevailing party. Accordingly, we dismiss this appeal because it and the fee request in the lower court were brought by fee counsel rather than counsel to the prevailing parties.

In April 1976, a Florida district court appointed Mr. Andrew Mavrides to represent the inmates of the Broward County Jail in their civil rights suit concerning confinement conditions. After six years of litigation, Mavrides filed a motion for $252,255.35 in attorney's fees and costs pursuant to 42 U.S.C. § 1988.[1] The motion was accompanied by the required supporting memorandum[2] and a detailed breakdown of Mavrides' costs, expenses and time. The defendants filed a motion in response, acknowledging that Mavrides was entitled to some compensation but contending that the amount should be only $29,430 in fees and $90.80 in costs. The defendants also requested that the court hold an evidentiary hearing on the fee issue. Mavrides apparently concluded that he was unable to represent himself adequately in the face of this opposition, and without consulting the court hired Mr. James Green to prosecute his fee application. As a result of Green's representa-

tion, Mavrides was awarded $89,850 in fees and $2,936.80 in costs.[3] Later, Green filed a § 1988 fee application, purportedly in Mavrides' name, seeking compensation for his services in representing Mavrides. The district court denied Green's application with the following order:

THIS CAUSE having come before the Court on the motion of James K. Green for Attorney's fees, and the Court having considered the record in this cause and being otherwise advised in the premises, it is

ORDERED AND ADJUDGED that said motion be, and it is hereby, DENIED. Mr. Green did not represent the plaintiff class but rather represented Mr. Mavrides.

Green, who now has hired a third lawyer to prosecute his claim, then filed an appeal in his own name asking us to reverse the district court's order and to remand for appropriate proceedings to determine his reasonable fees and expenses.[4]

This court has held that a prevailing party's counsel is entitled to reasonable compensation when he litigates his own claim for entitlement to § 1988 fees. *E.g., Johnson v. University College of the University of Alabama in Birmingham,* 706 F.2d 1205, 1207 (11th Cir.1983); *Johnson v. Mississippi,* 606 F.2d 635, 637–39 (5th Cir. 1979). Mavrides, would, therefore, be entitled to reasonable compensation for all time reasonably spent had he litigated his own fee application. He chose, however, to hire Green to press his claim after it became clear that the defendants intended to oppose his application. The threshold issue is whether such representation constitutes a compensable service within the meaning

1. The case had not reached final judgment at the time Mavrides filed his motion, but the court had entered numerous orders in the plaintiffs' favor and had ruled for them on the basic issue of whether conditions in the jail met constitutional standards at the time of filing and during the pendency of the lawsuit.

2. The accompanying memorandum dealt with the twelve factors of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974),

which must be considered in all fee cases in this circuit.

3. The validity and amount of the award to Mavrides are not challenged.

4. Green also asks us to require the district court to determine an appropriate award of fees and expenses for his lawyer on this appeal.

of the Act[5]. We join a number of other courts in concluding that it does. *See Shadis v. Beal,* 703 F.2d 71, 72–73 (3d Cir.1983); *Grendel's Den, Inc. v. Larkin,* 582 F.Supp. 1220, 1231 (D.Mass.1984); *Institutionalized Juveniles v. Secretary of Pub. Welfare,* 568 F.Supp. 1020, 1034 (E.D. Pa.1983).

We are guided to this conclusion by an examination of the policy considerations underlying the Act. The Act's primary function is to shift the costs of civil rights litigation from civil rights victims to civil rights violators. *Dowdell v. City of Apopka, Florida,* 698 F.2d 1181, 1189 (11th Cir. 1983). Its legislative history articulates two justifications for the cost-shifting mechanism. First, the mechanism affords civil rights victims effective access to the courts by making it financially feasible for them to challenge civil rights violations. Second, it provides an incentive for both citizens and members of the bar to act as "private attorneys general" to ensure effective enforcement of the civil rights laws. *Id.* (citing H.R.Rep. No. 1558, 94th Cong., 2d Sess. 1 (1976) and S.Rep. No. 1011, 94th Cong., 2d Sess. 1, 3 *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5910).

We have recognized that the Act's success in achieving its purposes depends on whether the cost-shifting mechanism reimburses costs and fees on a par with what the attorney would otherwise receive from fee-paying clients. *Dowdell,* 698 F.2d at 1190. Were we to institute an absolute ban on recovery for expenses incurred by a lawyer who finds it necessary to hire counsel to prosecute his fee application, the profitability of handling civil rights cases would be reduced, since he would then have to absorb an expense not generally associated with other types of litigation. If Green's services were not compensable in this case, for example, Mavrides would

have to pay Green's fee out of his own pocket and his real income for handling the case would be reduced significantly. Such reduced profitability would in turn channel lawyers away from civil rights suits towards more remunerative types of litigation, thereby diminishing the enforcement of the civil rights laws and decreasing victims' opportunity to gain redress. *Id.* Given this result, we find it more consistent with the goals of the Act to permit an attorney to be compensated for the costs reasonably incurred in hiring another to prosecute his fee application.

In reaching this conclusion we do not mean to imply that it is appropriate in every case for an attorney to hire counsel to prosecute his § 1988 fee application. On the contrary, we envision these cases to be the exception and not the rule. The propriety of passing any litigation costs on to the defendant under § 1988 remains subject to this circuit's requirement that the costs be justified by the necessities of the case. *Dowdell,* 698 F.2d at 1191. Whether fee counsel's services are justified in a particular instance remains within the sound discretion of the trial court.[6]

■ We now turn our consideration to the issue of whether Green had standing to file the petition for attorney's fees. He and his counsel are strangers to the litigation in the sense that they are neither parties nor attorneys of record for any party. The Act calls for awards to be made to a "prevailing party." We can find nothing in the Act or its legislative history which suggests that Congress contemplated that an attorney who did not actually represent the prevailing party would be able to file a fee application on his own motion. We do not believe, therefore, that the meaning of the term "prevailing party"

---

**5.** We express no opinion as to whether Mavrides acted properly in hiring Green to represent him on the fee application. This determination is one properly left in the first instance to the trial court.

**6.** Those attorneys who feel the need to hire counsel would be well-advised to raise the issue

with the court prior to taking such action. Otherwise they run the risk that the trial court may determine that the necessities of the case did not justify retaining special fee counsel. We are unwilling, however, to make prior consultation with and approval by the trial court a prerequisite to recovery.

as it is used in the Act can be expanded to encompass an attorney who has no connection with the principal case aside from his prosecution of the fee issue. The proper procedure is for the attorney who benefits from the representation to supplement his own fee application to include the costs and expenses that he has incurred by retaining fee counsel.[7] In this case, then, Mavrides is the proper individual to request compensation for Green's expenses. We dismiss this appeal in light of Mr. Green's lack of standing to file the motion for fees in the district court or to file an appeal to this court.

DISMISSED.

---

7. Strict conformity to the language of the statute would require that the application be made by the attorney in the name of his client, the prevailing party. We consider this to be the procedure of choice, since it ensures that awards made under the Act compensate their intended beneficiaries. We are aware that in some instances courts have awarded attorney's fees to an individual attorney rather than to the prevailing party. *See, e.g., Shadis v. Beal,* 692 F.2d 924 (3rd Cir.1982); *cf. Dennis v. Chang,* 611 F.2d 1302, 1309 (9th Cir.1980). In these cases, however, the awarded fees compensated the attorney for services rendered directly to the prevailing party.