**Herman CORN, Trustee, Plaintiff,**

v.

**CITY OF LAUDERDALE LAKES,
et al., Defendants.**

**No. 84–6034–CIV.**

United States District Court,
S.D. Florida.

May 20, 1992.

Andrew T. Lavin, Romanik & Lavin, P.A., Hollywood, Fla., Rod Tennyson, Rod Tennyson, P.A., West Palm Beach, Fla., for plaintiff.

Michael C. Mattson, Cooney, Haliczer, Mattson, Lance, Blackburn, Pettis & Richards, P.A., Fort Lauderdale, Fla., for defendants.

## ORDER AWARDING ATTORNEYS' FEES AND COSTS

PAINE, District Judge.

### Background

Plaintiff, HERMAN CORN, Trustee ("CORN"), sued the CITY OF LAUDERDALE LAKES (the "CITY") and several of its officials for damages under Title 42, United States Code, Section 1983,[1] essen-

---

1. "Every person who, under color of [state law], subjects ... any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the

tially alleging that a CITY ordinance arbitrarily deprived him of a 261–acre parcel without the due process of just compensation. During a four-day non-jury trial held August 12–15, 1991, CORN requested more than $27,000,000.00 in damages for a complete and permanent taking. In its Findings of Fact and Conclusions of Law (DE 208),[2] the Court ruled that CORN's constitutional rights had been violated, but awarded only $727,875.02 for a partial and temporary taking. The subsequent Final Judgment (DE 209) expressly reserved jurisdiction to consider attorneys' fees and costs.

On February 3, 1992, CORN filed a Motion for Attorneys' Fees and Costs (the "Motion") (DE 236), supported by a memorandum of law (DE 237) and several affidavits (DE 238–44). The CITY has submitted a Memorandum of Law in Opposition to the Motion (the "Response") (DE 254), attaching an affidavit and deposition transcripts as exhibits. Finally, CORN filed his Reply Memorandum on the Motion (the "Reply") (DE 255). The Court has reviewed and considered the entire record, and applied its own knowledge and experience concerning reasonable and proper fees, in resolving the Motion. *See Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir.1988).

### Analysis

#### 1. *Attorneys' Fees*

Title 42, United States Code, Section 1988 was enacted in 1976 "to encourage the enforcement of federal law through lawsuits filed by private persons." *Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 737, 107 S.Ct. 3078, 3093, 97 L.Ed.2d 585 (1987) (Blackmun, J., dissenting). It provides that, in any action brought under Section 1983 of that Title, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C.A. § 1988(b) (West Supp.1992). The provision necessitates three distinct inquiries: (a) whether CORN

prevailed, (b) whether the court should exercise its discretion in favor of a fee award, and (c) if so, what fee is reasonable.

#### (a) Prevailing Party

A "prevailing" plaintiff succeeds "on any significant issue in litigation which achieves some of the benefit the party sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). One who recovers less than all of the damages requested nonetheless "prevails"; the degree of his overall success affects the reasonableness, not the availability, of a fee award. *See Texas State Teachers Assoc. v. Garland Indep. School Dist.*, 489 U.S. 782, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989). CORN, who was awarded nearly three-quarters of a million dollars, is clearly a prevailing party.

#### (b) Discretion

A successful civil rights plaintiff should recover attorneys' fees, unless special circumstances make such an award unjust. *See Newman v. Piggie Park Enter.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968); *Dowdell v. City of Apopka*, 698 F.2d 1181, 1189 (11th Cir. 1983). The CITY cites *Kerr v. Quinn*, 692 F.2d 875, 877 (2d Cir.1982), for the proposition that, "[w]here the merits of a claim are obviously strong and would be so recognized by local counsel and where the probable damage award is high and would be so recognized by counsel, a district court has discretion to deny an application for counsel fees." (DE 254 at 1). But the CITY does not explain how CORN's claim was obviously strong or the damages clearly substantial; indeed, given the CITY's persistent, unwavering resistance to the claim, any such explanation would ring hollow. Moreover, the court does not find that the case was so strong as to preclude the recovery of prevailing party fees.

#### (c) Reasonable Fee

In *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), the

---

party injured in an action at law, suit in equity, or other proper proceeding for redress."

**2.** The decision is reported at 771 F.Supp. 1557 (S.D.Fla.1991).

Fifth Circuit Court of Appeals adopted a twelve-factor method, drawn from the American Bar Association Code of Professional Responsibility, Disciplinary Rule 2–106, for determining a reasonable fee under Section 1988. The trial judge should consider:

(1) the time and labor required;

(2) the novelty and difficulty of the questions involved;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and the length of the professional relationship with the client; and

(12) awards in similar cases.

488 F.2d at 717–19. *Johnson* was widely followed by other courts, and was cited with approval by Congress when it enacted the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. *See* H.R.Rep. No. 94–1558, p. 8 (1976); S.Rep. No. 94–1011, p. 6 (1976), U.S.Code Cong. & Admin.News 1976, pp. 5908, 5953.

■ The United States Supreme Court has, however, noted that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). This method, known as the "lodestar approach," *see Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 168 (3d Cir.1973), presumptively includes all of the *Johnson* factors, except, perhaps, the results obtained or a contingency enhancement. *See*

*Hensley,* 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9; *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 564–65, 106 S.Ct. 3088, 3097–98, 92 L.Ed.2d 439 (1986) (*"Delaware Valley I"*). The undersigned will therefore calculate, then adjust, the lodestar.

### i. Reasonable Number of Hours

"[E]xcessive, redundant, or otherwise unnecessary" hours should be excluded form the amount claimed. *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939. Counsel must exercise the same "billing judgment" in drafting fee applications that they would in preparing client bills. *Id.*

#### a) State Court

■ The CITY first argues that the time devoted by CORN's counsel to prosecuting a separate state court action between 1977 and 1984 is not compensable in this federal action (DE 254 at 4–6). But "[t]here is certainly nothing in § 1988 that limits fee awards to work performed after the complaint is filed in [federal] court." *Webb v. Board of Educ. of Dyer County,* 471 U.S. 234, 250, 105 S.Ct. 1923, 1932, 85 L.Ed.2d 233 (1985) (Brennan, J., concurring in part and dissenting in part). The question is whether the state proceeding was "useful and of the type ordinarily necessary to secure the final result" in federal court. *Delaware Valley I,* 478 U.S. at 561, 106 S.Ct. at 3096 (quoting *Webb,* 471 U.S. at 243, 105 S.Ct. at 1928).

■ CORN's pursuit of state remedies was indeed "useful" herein: the undersigned applied the doctrine of collateral estoppel to the state court ruling that CORN had acquired vested rights in the preordinance zoning (DE 208 at 16), relied upon the ruling to find that CORN possessed a constitutionally protected property interest (DE 208 at 21–22), received evidence developed at the state level in summary fashion to expedite the instant trial, and measured damages through the date that the state appellate decision became final (DE 208 at 29). CORN is therefore entitled to compensation for the state pro-

ceeding. *E.g., Robinson v. Ariyoshi,* 703 F.Supp. 1412, 1429 (D. Hawaii 1989).

CORN presents affidavits showing that 419.8 hours of partner time and 30.0 hours of associate time were reasonably expended in the state court action. The CITY disputed CORN's *entitlement* to fees for this service, but presented no contrary evidence as to the *reasonableness* of the hours worked. The Court finds that the time charged represents a reasonable number of hours for pursuing the state court action from 1977 to 1984, through the trial and appellate levels.

### b) Federal Court

CORN's counsel expended 880.2 hours of partner time, 792.5 hours of associate time, and 18.2 hours of paralegal/law clerk time in pursuing the federal court action. His experts, Bruce Rogow and Philip Michael Cullen, III, broadly testify that attorney time "was expeditiously used, with little or no duplication of effort in representing the Plaintiff's interests." (DE 241 at ¶ 8; DE 242 at ¶ 11). The CITY's expert, Michael Burke, however, separately analyzes three distinct phases of the litigation: Phase I, from August 1983 through March 1991, which included trial preparation and participation in two appeals to the Eleventh Circuit; Phase II, from March 1991 through August 1991, which included renewed trial preparation and the non-jury trial itself; and Phase III, from August 1991 to the present, which consists wholly of the fee application.

### Phase I

In Mr. Burke's opinion, the 353.6 hours of partner time and 220.9 hours of associate time spent during Phase I were entirely reasonable. There being no dispute, and upon a full review of the record, the Court approves these figures.

### Phase II

Mr. Burke does not question the 130 partner hours and 76 associate hours spent on drafting pleadings, conducting discovery, or attending trial during Phase II. He does, however, opine that the 320 hours of partner time and 400 hours of associate time for research and trial preparation during this six-month period is excessive, suggesting that 167 and 195 hours, respectively, would be reasonable. The Court agrees that too much time was billed, particularly since the case was very nearly tried, and assumedly well prepared, during Phase I. It appears that a portion of this time was devoted to bringing new counsel "up to speed," which, in the exercise of billing judgment, should not be charged to the client. On the other hand, the figures offered by Mr. Burke are too low; the four-day trial presented a number of difficult issues for which CORN's counsel had thoroughly, and quite sensibly, prepared. The Court finds that 200 hours of partner time and 200 hours of associate time are reasonable for research and trial preparation, making a total of 330 partner hours and 276 associate hours during Phase II.

### Phase III

Mr. Burke opines that the 13 partner hours expended by lead counsel in preparing the fee application is reasonable. He does, however, suggest that the "special counsel" employed specifically for this phase should have billed 35 hours, not 65, and that an associate working on the matter should have billed 35 hours, not 95.

The Eleventh Circuit Court of Appeals has recognized that, when necessary, a prevailing party may retain special counsel to prepare the fee request. *Jonas v. Stack,* 758 F.2d 567, 569 (11th Cir.1985). Although CORN has offered no real proof of necessity, the Court exercises its discretion in favor of permitting some recovery for the special counsel's work. But 65 hours for the special counsel, and 95 additional hours for an associate, is far too many. The Court will adopt Mr. Burke's expert opinion that 35 hours each is reasonable.[3]

---

**3.** Paralegal and law clerk time is compensable if the prevailing practice in a given community is to bill these items separately at market rates, rather than to include their cost within the attorneys' hourly rates. *Missouri v. Jenkins,* 491 U.S. 274, 285, 109 S.Ct. 2463, 2470, 105 L.Ed.2d 229 (1989). CORN does not present evidence as to the treatment of paralegal or law clerk time in the South Florida legal community, although Mr. Rogow's listing of attorney and paralegal/law clerk rates may imply that they are billed separately. More importantly, the Court

In sum, the Court finds the following hours to be reasonable:

| Phase | Partner Hrs | Assoc Hrs |
|-------|-------------|-----------|
| State Court | 419.8 | 30.0 |
| Phase I | 353.6 | 220.9 |
| Phase II | 330.0 | 276.0 |
| Phase III | 48.0 | 35.0 |
| TOTAL | 1151.4 | 561.9 |

### ii. Reasonable Hourly Rate

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988) (citing *Blum v. Stenson*, 465 U.S. 886, 895–96 n. 11, 104 S.Ct. 1541, 1547–48 n. 11, 79 L.Ed.2d 891 (1984)). The applicant bears the burden of producing satisfactory evidence that the requested rate is reasonable in the market. *Norman*, 836 F.2d at 1299 (citing *NAACP v. City of Evergreen*, 812 F.2d 1332, 1338 (11th Cir.1987)).

### a) State Court

Throughout the state court litigation, CORN paid his attorneys on an hourly basis, at rates ranging from $56 per hour in 1977 to $98 per hour in 1984.[4] The Court finds these rates reasonable.

### b) Federal Court

In determining reasonable rates for the federal contingency work, the Court must first consider the time delay in payment. "Clearly, compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings." *Missouri v. Jenkins*, 491 U.S. 274, 283, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989). Thus, "an appropriate adjustment for delay in payment," through the use of current hourly rates or historical rates adjusted to present value, "is within the contemplation of the statute." *Id.* The Eleventh Circuit "does not mandate any particular method for correcting the delay in payment." *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 775 n. 7 (11th Cir.1991).

The undersigned generally prefers to use adjusted historical rates as a more accurate calculation. In the instant case, however, where services have been rendered over a period of eight years, and the Court has made several adjustments to the hours claimed, it would be extremely difficult, if not impossible, to accurately compute interest on the aged account. Thus, the fee for services rendered in the federal action will be based on current hourly rates.

Mr. Rogow testifies, on CORN's behalf, that the current market rates are $200.00 per hour for partners and $150.00 per hour for associates. (DE 241 at ¶ 3). He concurrently offers expert testimony as to the historical hourly rates for partner and associate time. (*Id.*). The Court, however, finds those rates to be excessive and contradicted by CORN's own counsel: although Mr. Rogow testifies that the market rate for partners in 1984 was $150.00 per hour, CORN's counsel in late 1983, Gary Farmer, himself a partner with

finds that a reasonable fee in this case should not include compensation for the 18.2 hours of paralegal/law clerk time billed.

**4.** Although CORN subdivided the 449.8 hours into partner and associate hours, it appears that the client was billed at one rate for all work performed.

Abrams, Anton, Robbins, Resnick, Schneider & Mager, P.A., charged only $98.00 per hour. The quote for current rates is similarly excessive.

In response, Mr. Burke testifies that the prevailing hourly rates for civil rights attorneys range from $150.00 to $250.00 for partners and from $85.00 to $150.00 for associates. He then offers specific opinions as to the reasonable rate, between $75.00 and $175.00 per hour, for each individual participating attorney.

Upon consideration of the full record, the undersigned finds that (i) all of CORN's counsel possessed, and demonstrated, a level of skill commensurate with that of qualified attorneys in the South Florida legal community, and (ii) hourly rates of $175.00 per hour for partners and $125.00 per hour for associates who worked on the federal litigation are reasonable.

### iii. Lodestar
#### a) State Court

| Hours | Rate | Fee |
| --- | --- | --- |
| 449.8 | $56–98 | $35,648.00 |

#### b) Federal Court

| Type | Hours | Rate | Fee |
| --- | --- | --- | --- |
| Partner | 731.6 | $175.00 | $128,030.00 |
| Associate | 531.9 | 125.00 | 66,487.50 |
| TOTAL | 1263.5 | ---- | $194,517.50 |

### iv. Adjustments to Lodestar
#### a) State Court

As with the foregoing discussion of the time delay in payment on contingency cases, the Court recognizes that a dollar now has far less purchasing power than a dollar paid by CORN to his counsel several years ago. The lodestar calculation for state court services will therefore be adjusted, as requested, "to compensate the Plaintiff for the delay in receiving reimbursement on these fees." See Ohio–Sealy Mattress Mfg. Co. v. Sealy Inc., 776 F.2d 646, 663 (7th Cir.1985). CORN has offered unrebutted expert testimony that an infla-tion adjustment, based upon the 90–day Treasury Bill rates employed by the Court in its Findings of Fact and Conclusions of Law (DE 208 at 13), equals $39,195.00, for a total adjusted award of $74,843.00.

#### b) Federal Court

■ If the plaintiff achieved only partial or limited success, then the lodestar must be reduced to an amount that is not excessive. Norman v. Housing Auth. of City of Montgomery, 836 F.2d 1292, 1302 (11th Cir.1988) (citing Hensley v. Eckerhart, 461 U.S. 424, 436–37, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)).[5] While CORN prevailed on the only liability issue decided by the Court,[6] and was awarded $727,875.02 in

---

5. Alternatively, the reasonable number of hours could be reduced, prior to calculating the lodestar, to reflect the limited success. See Hensley, 461 U.S. at 436–37, 103 S.Ct. at 1941.

6. Because the Court found the CITY liable for an arbitrary and capricious due process taking, it did not consider whether the ordinances went "too far" and entitled CORN to just compensation under the Fifth Amendment (DE 208 at 25).

damages, his overall success was nonetheless limited: the Court rejected his positions regarding the fair market value of the property, the loan-to-value ratio on the proposed project, and the period, physical scope, and permanence of the taking. For this reason, a downward adjustment of the lodestar is warranted.

On the other hand, CORN has presented evidence sufficient to justify a contingency enhancement under Eleventh Circuit precedent. In *Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) ("*Delaware Valley II*"), a four-justice plurality wrote that "enhancement for the risk of nonpayment should be reserved for exceptional cases," *id.* at 728, 107 S.Ct. at 3088, while a four-justice dissent noted that "a fee that may be appropriate in amount when paid promptly and regardless of the outcome of the case, may be inadequate and inappropriate when its payment is contingent upon winning the case." *Id.* at 735, 107 S.Ct. at 3091. Justice O'Connor, as the swing vote, adopted the compromise position that no enhancement for risk is appropriate unless the applicant can establish that (i) without the enhancement the prevailing party would have faced substantial difficulties in finding counsel in the local or other relevant market, and (ii) the rate of compensation for "contingent fee cases as a class" in the relevant market was different from cases in which payment was certain. *Id.* at 731–34, 107 S.Ct. at 3089–91, cited in *Martin v. University of South Alabama*, 911 F.2d 604, 611 (11th Cir.1990). "Her conclusion thus forms the majority opinion and generally is recognized as the holding of the Court." *Lattimore v. Oman Const.*, 868 F.2d 437, 439 n. 4 (11th Cir.1989).

CORN has, through expert affidavits, established both prongs of Justice O'Connor's *Delaware Valley II* test. The question becomes what degree of multiplier is appropriate. The *Delaware Valley II* plurality wrote that, as a general rule, the lodestar should be enhanced by no more than one-third. 483 U.S. at 730, 107 S.Ct. at 3089. Justice O'Connor did not discuss this proposed cap on the multiplier. Although the Eleventh Circuit has since affirmed a trial judge's decision to double the lodestar, *see Lattimore*, 868 F.2d at 440, the undersigned would be very reluctant to use a multiplier greater than 1.33.

In any event, the Court finds that (i) $194,517.50 represents a reasonable fee for the federal litigation, and (ii) a downward adjustment to reflect the partial success obtained by CORN is counterbalanced by an upward adjustment to reflect the contingency fee risk.

### v. Conclusion

CORN is a prevailing party entitled to an award of reasonable attorneys' fees under Title 42, United States Code, Section 1988. Using the adjusted lodestar method, the Court will award the following fees as reasonable:

| Phase | Fee |
|---|---|
| State Court | $ 74,843.00 |
| Federal Court | 194,517.50 |
| TOTAL | $269,360.50 |

### 2. Costs

The parties agree that the following taxable costs are allowed under Title 28, United States Code, Section 1920:

1. Fees of the Clerk and Marshall — $ 624.50
2. Fees of court reporters — 3,048.25
3. Fees and disbursements for witnesses — 136.58

TOTAL — $3,809.33

The Court agrees with the CITY that CORN has not provided sufficient detail as to what photocopies were made "necessarily obtained for use in the case," rather than for the convenience of counsel, *see Allen v. Freeman*, 122 F.R.D. 589, 591 (S.D.Fla.1988), and has not shown the per copy rate charged. Thus, photocopying costs will not be taxed.

### 3. *Expenses*

Finally, CORN seeks reimbursement for several items that are not statutorily taxable costs, do not impact upon the lodestar calculation, but nevertheless represent legitimate litigation expenses. *Dowdell v. City of Apopka*, 698 F.2d 1181, 1191–92 (11th Cir.1983); *Allen*, 122 F.R.D. at 591 (award should include "reasonable out-of-pocket expenses of the attorney beyond normal overhead"). The Court finds the following expenses to be reasonable:

| | | |
|---|---|---:|
| 1. | Computerized legal research | $4,000.00 |
| 2. | Long distance phone service | 102.89 |
| 3. | Postage | 136.44 |
| 4. | Delivery service charges | 300.00 |
| 5. | Express mail charges | 25.00 |
| 6. | Telefax charges | 50.00 |
| | TOTAL | $4,614.33 |

### Conclusion

It is hereby ORDERED and ADJUDGED that

1. The Motion (DE 236) is GRANTED.

2. CORN shall recover from the CITY $269,360.50 in attorneys' fees, $3,809.33 in taxable costs, and $4,614.33 in litigation expenses, for a total of $277,784.16, which shall bear interest at the rate of 4.40 percent per annum.

DONE and ORDERED.