[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13578

Non-Argument Calendar

_____

Mr. JAMES ERIC MCDONOUGH,
Mrs. VANESSA LYNN MCDONOUGH,

                        Plaintiffs-Appellants,

*versus*

THE CITY OF HOMESTEAD, FLORIDA,
GEORGE GRETSAS,
ALEXANDER ROLLE,
TOM MEAD,
RICKY RIVERA,

                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cv-21538-KMM

_____

Before GRANT, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Litigants who are forced to defend against frivolous civil rights claims may recover attorney's fees for their troubles. *See* 42 U.S.C. § 1988; *Head v. Medford*, 62 F.3d 351, 355 (11th Cir. 1995). That is what happened here. James and Vanessa McDonough brought frivolous civil rights claims against the city of Homestead and its manager, George Gretsas. Accordingly, the district court awarded the defendants with attorney's fees for the time they spent litigating these frivolous claims. And the district court also awarded the defendants with the attorney's fees they incurred when litigating (1) the McDonoughs' other closely related claims and (2) the motion for attorney's fees.

The McDonoughs challenge each component of that award. They maintain that a grand total of zero attorney's fees should have been granted. But because their federal claims are frivolous, and

because binding precedent allows for the recovery of the other attorney's fees, we affirm the district court's judgment.[1]

## I.

This case is the latest in a long line of disputes pitting the McDonoughs against the city of Homestead and its manager, George Gretsas. In this iteration, the McDonoughs allege that Gretsas violated federal and state law when he illegally gathered and distributed "private and/or false" information about them. And the McDonoughs further allege that the city of Homestead also violated state and federal law when it "acquiesced to and/or ratified such unlawful behavior through its final policy makers."

The McDonoughs originally filed this lawsuit with three other co-plaintiffs. But after the City moved to dismiss that complaint, the McDonoughs chose to separate themselves from their co-plaintiffs and file a near-identical amended complaint under a separate case number. The parties refer to the original suit as the *Rea* Action, and we adopt that terminology here.

The district court dismissed the federal claims in the McDonoughs' amended complaint with prejudice on shotgun pleading and res judicata grounds. And the court declined to

---

[1] We issued a jurisdictional question asking the parties to address whether this appeal was taken from a final judgment. The McDonoughs did not reply. We conclude that we have jurisdiction because the district court's fee award was in fact a final judgment.

exercise supplemental jurisdiction over the McDonoughs' remaining state law claims.

This litigation was expensive, so the defendants sought attorney's fees. The district court held that attorney's fees were appropriate for the federal claims because those claims were frivolous. The court did not find the state claims frivolous because these claims were not litigated on the merits. But the defendants' fee request did not distinguish between the time spent on the frivolous federal claims and on the dismissed state claims. The defendants' rationale was that the McDonoughs would not have been litigating in federal court at all *but for* the frivolous federal claims. The district court agreed with this rationale, explaining that this suit "was always essentially a suit based on the federal constitutional violations." So the district court ultimately awarded the defendants with the attorney's fees they incurred when litigating (1) the frivolous federal claims; (2) the dismissed state claims; (3) the initial *Rea* Action; and (4) the motion for attorney's fees.

The McDonoughs challenge each element of that award.

## II.

We review the district court's frivolity finding for abuse of discretion. *Beach Blitz Co. v. City of Miami Beach*, 13 F.4th 1289, 1297 (11th Cir. 2021). And we also review the court's decision to award attorney's fees for abuse of discretion. *Smalbein ex rel. Est. of Smalbein v. City of Daytona Beach*, 353 F.3d 901, 904 (11th Cir. 2003).

But the proper standard for awarding attorney's fees is a question we review de novo. *Id.*

### III.

The McDonoughs raise three issues on appeal. Each lacks merit.

### A.

*First*, the McDonoughs assert that the district court abused its discretion by finding that their federal claims were frivolous. Not so. Four factors are "important" when assessing frivolity: (1) "whether the plaintiff established a prima facie case"; (2) "whether the defendant offered to settle"; (3) "whether the trial court dismissed the case prior to trial"; and (4) "whether there was enough support for the claim to warrant close attention by the court." *Sullivan v. Sch. Bd.*, 773 F.2d 1182, 1189 (11th Cir. 1985); *Beach Blitz*, 13 F.4th at 1302.

The district court correctly identified and analyzed these factors, concluding that each one supported a frivolity finding. The court held that the first factor weighed in favor of frivolity because the McDonoughs' claims were "so clearly" barred by res judicata that they could not establish a prima facie case. That conclusion was not an abuse of discretion. This is not the McDonoughs' first time in court—they have already filed at least three other suits involving similar claims and defendants. And as the district court noted, all the McDonoughs' federal claims have already been raised in other cases.

In fact, the McDonoughs themselves acknowledge that many of their allegations are the subject of separate legal actions and concede that the first frivolity factor weighs in the defendants' favor. The district court was correct to characterize the McDonoughs' amended complaint as no more than an attempt to either supplement existing cases or relitigate old ones.

All agree that the second and third factors suggest frivolity. The defendants did not offer to settle, and the case was dismissed (with prejudice) before trial. *See Beach Blitz*, 13 F.4th at 1303.

As for the fourth frivolity factor, the magistrate judge concluded that the McDonoughs' federal claims did not warrant careful attention and review. The district court did not abuse its discretion by adopting that conclusion. The McDonoughs have already raised their federal claims in other (mostly unsuccessful) lawsuits, so those claims do not "warrant close attention" by the court here. *Id.* at 1302.

Because the McDonoughs' federal claims meet all four of this Circuit's frivolity factors, the district court did not err.

**B.**

*Second*, the McDonoughs maintain that the district court applied the wrong standard when awarding attorney's fees for both the frivolous and non-frivolous claims. The court did no such thing.

The Supreme Court in *Fox v. Vice* explained that "a defendant may deserve fees even if not all the plaintiff's claims were frivolous"

because the relevant fee-shifting statute "serves to relieve a defendant of expenses *attributable* to frivolous charges." 563 U.S. 826, 834 (2011) (emphasis added). The "dispositive question" here is "whether the costs would have been incurred in the absence of the frivolous allegation." *Id.* at 838.

The magistrate judge and the district court faithfully applied this standard. The court concluded that the fees incurred while litigating the McDonoughs' state law claims were "incurred because of, but only because of," their frivolous federal law claims. *Id.* at 836. This conclusion was not an abuse of discretion. There was far more than a "minute evidentiary overlap" between the McDonoughs' state and federal claims. *See Johnston v. Borders*, 36 F.4th 1254, 1285–86 (11th Cir. 2022). Indeed, the McDonoughs' state law claims are based on the same exact factual predicate as their frivolous federal law claims. As such, we agree with the district court that the defendants would not have incurred the fees associated with the McDonoughs' state law claims *but for* the frivolous federal law claims. *See Fox*, 563 U.S. at 836.

We also agree with the district court that the defendants were entitled to attorney's fees for the time they spent on the initial *Rea* Action. The lawsuit here and the *Rea* Action are almost identical. Indeed, the complaint in the *Rea* Action functioned as the original complaint in this case. So the district court did not abuse its discretion in concluding that the defendants' efforts in the *Rea* Action were "necessary" to advance their cause here. *Webb v. Dyer Cnty. Bd. of Educ.*, 471 U.S. 234, 243 (1985).

The McDonoughs also fault the district court for *reducing* the fee award for the *Rea* Action by sixty percent, arguing that this reduction was impermissible apportionment. (Nevermind that the alternative would be paying the full cost.) Again, no. The defendants sought only forty percent of their fees from the initial *Rea* Action. And that is what the court awarded. This is exactly the sort of "rough justice" that the Supreme Court requires. *Fox*, 563 U.S. at 838. We do not demand that district courts become "green-eyeshade accountants" and "achieve auditing perfection." *Id.*

In short, the district court identified the appropriate legal standard and correctly applied it.

## C.

*Third*, and finally, the McDonoughs argue that the district court was not allowed to award attorney's fees for both the entitlement and amount phases of the fee-related litigation. The McDonoughs concede the availability of attorney's fees for the entitlement phase—the phase when the court first determines whether the defendants are entitled to attorney's fees at all. But they argue that the defendants cannot recover attorney's fees for the time spent litigating over the exact amount of those fees—the "fees-on-fees" phase.

That argument is squarely foreclosed by this Court's precedents. We allow parties to recover "the cost of establishing their right to, and the amount of attorney's fees—the right to fees-on-fees." *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1301 (11th Cir.

23-13578              Opinion of the Court                    9

2010); *see also Jackson v. State Bd. of Pardons & Paroles*, 331 F.3d 790, 799 (11th Cir. 2003).

★     ★     ★

Because the McDonoughs' federal claims are frivolous and their remaining arguments are precluded by binding precedent, we **AFFIRM** the district court's judgment.

23-13578          ABUDU, J., Concurring          1

ABUDU, Circuit Judge, Concurring:

I concur in the majority opinion because the McDonoughs have not shown an abuse of discretion under these circumstances. *See Rasbury v. IRS (In re Rasbury)*, 24 F.3d 159, 168 (11th Cir. 1994) ("[T]he abuse of discretion standard allows 'a range of choice for the district court, so long as that choice does not constitute a clear error of judgment.'" (quoting *United States v. Kelly*, 888 F.2d 732, 745 (11th Cir. 1989))). I write separately to highlight the narrowness of this decision and to underscore the reasons why prevailing-defendant attorney's fees awards under 42 U.S.C. § 1988(b) are, and should remain, rare.

We have explained that the "primary function" of Section 1988's fees provision "is to shift the costs of civil rights litigation from civil rights victims to civil rights violators." *Jonas v. Stack*, 758 F.2d 567, 569 (11th Cir. 1985). Section 1988 accomplishes this by "afford[ing] civil rights victims effective access to the courts by making it financially feasible for them to challenge civil rights violations" and by "provid[ing] an incentive for both citizens and members of the bar to act as 'private attorneys general' to ensure effective enforcement of the civil rights laws." *Id.* (quoting *Dowdell v. City of Apopka*, 698 F.2d 1181, 1189 (11th Cir. 1983)).

As a counterweight to this "primary function," we have, as the majority notes, permitted awards of attorney's fees to prevailing defendants when those defendants "are forced to defend against frivolous civil rights claims." Maj. Op. at 2; *Head v. Medford*, 62 F.3d 351, 355 (11th Cir. 1995); *see also Christiansburg Garment Co. v. EEOC*,

434 U.S. 412, 420 (1978) ("If anything can be gleaned from these fragments of legislative history, it is that while Congress wanted to clear the way for [civil rights] suits to be brought . . . , it also wanted to protect defendants from burdensome litigation having no legal or factual basis."); *id.* at 421 ("[A] district court may in its discretion award attorney's fees to a prevailing defendant [under Section 1988] upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."); *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 635 (2001) (Ginsburg, J., dissenting) ("Congress did not make fees available to plaintiffs and defendants on equal terms.").

Our precedent—which explains the "primary function" of Section 1988 and sets a higher bar for prevailing defendants to obtain attorney's fees compared to prevailing plaintiffs—faithfully implements Congress's intent. *See Dowdell*, 698 F.2d at 1189 ("Because civil rights litigants are often poor, and judicial remedies are often non-monetary, [Section 1988] shifts the costs of litigation from civil rights victim to civil rights violator."); Rochelle Cooper Dreyfuss, Note, *Promoting the Vindication of Civil Rights Through the Attorney's Fees Awards Act*, 80 COLUM. L. REV. 346, 350-54 (1980) (describing the legislative history of Section 1988 and explaining why Congress created a double standard favoring civil rights plaintiffs: "to allow defendants to recover on a basis as easy as that provided for plaintiffs would thwart congressional intent by causing impecunious plaintiffs to hesitate to pursue grievances for fear of being burdened with opponents' costs should the litigation fail"); *id.* at 354 n.54 ("An

attempt . . . to eliminate the double standard was defeated by the Senate." (citing 122 Cong. Rec. 31,792 (1976))).

Given this background, courts should ensure that prevailing-defendant awards do not, contrary to Congress's intent, chill good faith attempts to vindicate civil rights in federal courts. High guardrails for prevailing-defendant fee awards are important in Section 1988 cases because an award to a prevailing defendant: (i) imposes a cost on an individual who believes their constitutional rights have been violated; and (ii) risks chilling civil rights litigation that benefits society as a whole. Several considerations can help ensure that these awards are consistent with Section 1988's "primary function." *Jonas*, 758 F.2d at 569.

First, frivolity is a high bar. Good-faith disagreement about the law signals that a claim is not frivolous. *See Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001) ("A claim is frivolous if it is without arguable merit either in law or fact."); *see also Harris N.A. v. Hershey*, 711 F.3d 794, 801 (7th Cir. 2013) ("Reasonable lawyers and parties often disagree on the application of law in a particular case, and this court's doors are open to consider those disagreements brought to us in good faith."). This is true even when, as the Supreme Court has explained, a suit ultimately fails:

> [I]t is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight

4                    ABUDU, J., Concurring                    23-13578

> claims . . . .  Even when the law or the facts appear
> questionable or unfavorable at the outset, a party may
> have an entirely reasonable ground for bringing suit.

*Christiansburg Garment*, 434 U.S. at 421-22.  Courts should, therefore, hesitate to award a prevailing-defendant attorney's fees under Section 1988 unless the suit was brought either without *any* arguable merit or basis in fact or if the plaintiff's conduct during litigation had other markers of frivolity and harassment.  *See, e.g.*, *Clark v. Ga. Pardons & Paroles Bd.*, 915 F.2d 636, 641 (11th Cir. 1990) ("[I]f a plaintiff . . . has a long history of bringing unmeritorious litigation, [a] court can consider that fact" in assessing frivolity.); *McWilliams v. Colorado*, 121 F.3d 573, 574 (10th Cir. 1997) ("[r]epetitious litigation of virtually identical causes of action" suggests frivolousness); *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (explaining, in the sanctions context, that an attorney can act in bad faith by "argu[ing] a meritorious claim for the purpose of harassing an opponent," or "by delaying or disrupting the litigation or hampering enforcement of a court order" (quoting *Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 664, 649 (9th Cir. 1997))).  A claim that loses on the merits—and nothing more—is likely not frivolous unless there is no good-faith argument for a change in law where that claim would succeed.  *See NLRB v. Lucy Ellen Candy Div. of F. & F. Labs., Inc.*, 517 F.2d 551, 555 (7th Cir. 1975) ("A frivolous appeal means something more to us than an unsuccessful appeal."); *cf.* MODEL RULES OF PRO. CONDUCT r. 3.1 (AM. BAR. ASS'N 2024) (explaining that "a good faith argument for an extension, modification[,] or reversal of existing law" is not frivolous).  Awarding fees in situations beyond

23-13578                    ABUDU, J., Concurring                    5

these narrow parameters could upset the balance that Congress struck between civil rights violators and civil rights victims.  *See Dowdell*, 698 F.2d at 1189.

Second, district courts should be especially wary to enter attorney's fees awards against *pro se* plaintiffs because *pro se* representation is difficult and courts must give *pro se* filings special consideration and liberal construction.  *See e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986); *Campbell v. Air Jam Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014). If plausible to read a *pro se* party's filings as non-frivolous, even if still non-meritorious, courts must give *pro se* litigants that benefit of the doubt.  *E.g., United States v. Jordan*, 915 F.2d 622, 624-25 (11th Cir. 1990) ("Federal courts . . . have an obligation to look behind the label of a motion filed by a *pro se* [party] and determine whether the motion is . . . cognizable . . . .").

Third, courts should be cognizant of how expensive legal work is and who might be absorbing the cost of the award.  Here, the district court awarded defendants $40,428.58 in attorney's fees.[1] While the McDonoughs' may be liable for that sum themselves, if

---

[1] The fact that this case, which was dismissed at the pleading stage, led to over $40,000 in fees illustrates the high cost of legal work.  Many, if not most, litigants cannot afford such a sum to vindicate their constitutional rights.  Frequent awards of high sums could disincentivize plaintiffs from bringing civil rights suits, stifle the development of the law, and undermine the purpose of Section 1988.  This presents another sound reason why Congress intended prevailing-defendant fee awards to be a rare occurrence.

6                          ABUDU, J., Concurring                          23-13578

a plaintiff obtains *pro bono* representation, the *pro bono* lawyer may absorb an award against their client in some cases.  Neither *pro se* individuals nor the *pro bono* organizations that engage in civil rights litigation possess the resources to absorb costs like this with regularity.  Thus, if awarded often, awards like this might operate as a tax on *pro bono* representation—which is a valuable and important service in the legal profession and for the state of the law generally.  Such an outcome would also undermine Section 1988's "primary function." *Jonas*, 758 F.2d at 569.

With those reflections and reminders, I concur.