Marciano RODRIGUEZ, by his next best friend and guardian Lazaro RODRIGUEZ;  Emelina Rodriguez; et al., Plaintiffs-Appellants,

v.

UNITED STATES of America;  Donna Shalala, in her capacity as Secretary of Health and Human Services;  et al., Defendants-Appellees.

No. 97-5812.

United States Court of Appeals,

Eleventh Circuit.

March 15, 1999.

Appeal from the United States District Court for the Southern District of Florida. (No. 97-1182-CV-DLG), Donald L. Graham, Judge.

Before TJOFLAT, BLACK and CARNES, Circuit Judges.

CARNES, Circuit Judge:

This appeal involves a class action challenge to one provision of the Welfare Reform Act of 1996, which is more formally known as the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub.L. No. 104-193, 110 Stat. 2105 (1996).  The challenged provision, codified as 8 U.S.C. § 1612, provides that only specified categories of aliens remain eligible for Supplemental Security Income ("SSI") or food stamps, or both.  The plaintiffs are a class of aliens who do not fit within any of the eligible categories.  The plaintiffs contend that the statute violates their Fifth Amendment right to equal protection because it does not include among those eligible for benefits all legal aliens.[1]

After determining that the Supreme Court's decision in *Mathews v. Diaz,* 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976), dictated application of the rational basis test in assessing the constitutionality of § 1612, the district court concluded that provision satisfied that level of scrutiny and dismissed the plaintiffs' claim.  We agree and affirm.

---

[1]The Welfare Reform Act excludes all illegal aliens from eligibility for SSI and food stamp benefits. Because no members of the plaintiff class are illegal aliens, we will for convenience use the term "alien" in the remainder of this opinion as though it encompasses only legal aliens.

## I. BACKGROUND

A. THE WELFARE REFORM ACT'S PROVISIONS AFFECTING THE ELIGIBILITY OF ALIENS FOR SSI AND FOOD STAMP WELFARE BENEFITS

The federal government provides SSI benefits to impoverished individuals who are elderly, blind, or disabled, *see* 42 U.S.C. §§ 1381-1382c, and food stamp benefits to low-income households, *see* 7 U.S.C. §§ 2011, *et seq.* Prior to the Welfare Reform Act of 1996, aliens were eligible for both SSI and food stamp benefits on the same basis as citizens. However, that act, along with two subsequent amendments to it,[2] restricts aliens' eligibility for SSI and food stamps. It does so in two ways.

First, with certain exceptions not relevant to this case, the Act provides that "an alien who is not a qualified alien (as defined in [8 U.S.C. § 1641] ) is not eligible for any Federal public benefit [including SSI and food stamps]." 8 U.S.C. § 1611(a). Thus, § 1611(a) eliminates from eligibility for SSI and food stamps any alien who is not a "qualified alien."[3]

---

[2]*See* Balanced Budget Act of 1997, Pub.L. No. 105-33, §§ 5301-5304, 5306, 5562-5563, 111 Stat. 251 (1997); Agricultural Research, Extension, and Education Reform Act of 1998, Pub.L. No. 105-185, §§ 503-508, 112 Stat. 523 (1998).

[3]The Act defines "qualified alien" as follows:

[T]he term "qualified alien" means an alien who ... is—

(1) an alien who is lawfully admitted for permanent residence under the Immigration and Nationality Act [ 8 U.S.C. § 1101 et seq.],

(2) an alien who is granted asylum under section 208 of such Act [ 8 U.S.C. § 1158],

(3) a refugee who is admitted to the United States under section 207 of such Act [ 8 U.S.C. § 1157],

(4) an alien who is paroled into the United States under section 212(d)(5) of such Act [ 8 U.S.C. § 1182(d)(5) ] for a period of at least 1 year,

(5) an alien whose deportation is being withheld under section 243(h) of such Act [ 8 U.S.C. § 1253(h) ] (as in effect immediately before the effective date [April 1, 1997] of section 307 of division C of Public Law 104-208) or section 241(b)(3) of such Act [8 U.S.C. § 1251(b)(3) ] (as amended by section 305(a) of division C of Public Law 104-

2

The second way in which 8 U.S.C. § 1612 restricts the class of aliens who can receive SSI and food stamps is through § 1612(a)(1). That provision specifies that "[n]otwithstanding any other provision of law and *except* as provided in [8 U.S.C. § 1612(a)(2) ], an alien who is a qualified alien ... is not eligible for [SSI and food stamps]." (emphasis added) Unless an alien falls into one of the fourteen categories of qualified aliens listed in 8 U.S.C. § 1612(a)(2), he is ineligible for SSI and food stamps. The fourteen categories that are eligible, i.e. excepted from ineligibility, are as follows[4]:

> (1) A permanent resident legal alien who has either worked or can be credited with "40 qualifying quarters"[5] of work in the United States is eligible for SSI and food stamps, *see* 8 U.S.C. § 1612(a)(2)(B);

> (2) An alien who is "lawfully residing in any State" and is either a veteran with an honorable discharge, an active duty service member, or the spouse or unmarried dependent child of such veteran or active duty service member is eligible for SSI and food stamps, *see* 8 U.S.C. § 1612(a)(2)(C);

> (3) An alien who "is lawfully residing in the United States" and "was a member of a Hmong or Highland Laotian tribe" who provided assistance to the United States military in the Vietnam era is eligible for food stamps, *see* 8 U.S.C. § 1612(a)(2)(K);

---

> 208).

> > (6) an alien who is granted conditional entry pursuant to section 203(a)(7) of such Act as in effect prior to April 1, 1980 [ 8 U.S.C. § 1153(a)(7) ]; or

> > (7) an alien who is a Cuban and Haitian entrant (as defined in section 501(e) of the Refugee Education Assistance Act of 1980).

> 8 U.S.C. § 1641(b). In addition, the term "qualified alien" also includes certain "battered aliens" as defined in 8 U.S.C. § 1641(c).

> The plaintiffs contend that some of them are "qualified aliens" and others are not. Nonetheless, we have relegated the definition of "qualified alien" to a footnote and discuss it no further, because none of the plaintiffs fit within the fourteen categories of aliens eligible for benefits set forth in § 1612(a)(2), and that alone defeats their eligibility for SSI and food stamp benefits.

[4]We have rearranged the order for the convenience of later reference.

[5]The term "qualifying quarters" is defined in Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*.

3

(4) An alien who is a refugee admitted to the United States pursuant to 8 U.S.C. § 1157 is eligible for SSI and food stamps for seven years after the alien's admission, *see* 8 U.S.C. § 1612(a)(2)(A)(i);

(5) An alien who is granted asylum in the United States pursuant to 8 U.S.C. § 1158 is eligible for SSI and food stamps for seven years after asylum is granted, *see* 8 U.S.C. § 1612(a)(2)(A)(ii);

(6) An alien whose deportation is withheld, pursuant to 8 U.S.C. § 1253(h) because of fear of persecution is eligible for SSI and food stamps for seven years the deportation is withheld, *see* 8 U.S.C. § 1612(a)(2)(A)(iii);

(7) An alien who is a Cuban or Haitian entrant pursuant to the Refugee Education Assistance Act of 1980 is eligible for SSI and food stamps for seven years after such status is granted, *see* 8 U.S.C. § 1612(a)(2)(A)(iv);

(8) An alien who is admitted to the United States as an "Amerasian immigrant,"-an alien fathered by a United States citizen and born in Vietnam between January 1, 1962 and January 1, 1976[6]-is eligible for SSI and food stamps for seven years after admission to the United States, *see* 8 U.S.C. § 1612(a)(2)(A)(v);

(9) "[A]n alien who was lawfully residing in the United States on August 22, 1996" and is "blind or disabled"[7] is eligible for SSI and is also eligible for food stamps if he "is receiving benefits or assistance for blindness or disability,"[8] *see* 8 U.S.C. § 1612(a)(2)(F);

(10) An alien who was "lawfully residing in the United States on August 22, 1996" and, on that date, was 65 years of age or older is eligible for food stamps, *see* 8 U.S.C. § 1612(a)(2)(I);

(11) An alien who was "lawfully residing in the United States" on August 22, 1996 and is currently under 18 years of age is eligible for food stamps, *see* 8 U.S.C. § 1612(a)(2)(J);

(12) "[A]n alien who is lawfully residing in the United States and who was receiving [SSI] benefits on August 22, 1996" is eligible for SSI, *see* 8 U.S.C. § 1612(a)(2)(E);

(13) An alien who is receiving SSI benefits "for months after July 1996" pursuant to an application filed before January 1, 1979 remains eligible for SSI if "the Commissioner of Social Security lacks clear and convincing evidence that such individual is ... ineligible" for SSI benefits because of the Welfare Reform Act's new eligibility requirements, *see* 8 U.S.C. § 1612(a)(2)(H);

---

[6]*See* Foreign Operations, Export Financing, and Related Programs Appropriations Act § 584, as contained in Pub.L. No. 100-202, 101 Stat. 1329 (1987).

[7]The term "blind or disabled" is defined in 42 U.S.C. § 1382.

[8]The term "receiving benefits or assistance for blindness or disability" is defined in 7 U.S.C. § 2012(r).

(14) An alien who is either an American Indian born in Canada or a member of an "Indian tribe"[9] is eligible for SSI and food stamps, *see* 8 U.S.C. § 1612(a)(2)(G).

In summary, the Welfare Reform Act, as amended, makes the fourteen categories of qualified aliens specified in 8 U.S.C. § 1612(a)(2) the only aliens eligible for SSI or food stamps, or both. All other aliens, even those who otherwise meet the definition of "qualified alien," are ineligible.

## B. THE PLAINTIFFS' CLAIM THAT THE WELFARE REFORM ACT IS UNCONSTITUTIONAL AND THE DISTRICT COURT'S DISPOSITION OF THAT CLAIM

The plaintiffs filed a class action lawsuit against the United States and several other defendants (collectively "the defendants") seeking to enjoin § 402 of the Welfare Reform Act, which is codified as 8 U.S.C. § 1612.[10] The plaintiffs defined their class as consisting of all individuals who "are poor, elderly, or disabled noncitizens legally residing in Florida before the enactment of the Welfare Reform Act who were eligible for, or who will become eligible for, federal SSI and related Food Stamp [benefits], and who, based solely on their noncitizen status, will lose or be denied or have been denied SSI benefits and related Food Stamps as a result of [8 U.S.C. § 1612] of the Welfare Reform Act."

In Count 1 of their complaint, the plaintiffs claimed that 8 U.S.C. § 1612 is unconstitutional because it violates their right to equal protection under the Fifth Amendment to the United States Constitution.[11] They requested that the district court declare 8 U.S.C. § 1612 unconstitutional and enjoin its enforcement. The defendants filed a motion to dismiss Count 1 of the complaint.

Applying the rational basis standard of review, the district court concluded that 8 U.S.C. § 1612 was rationally related to legitimate government interests and therefore constitutional. Accordingly, the district

---

[9]The term "Indian tribe" is defined in 25 U.S.C. § 450b(e).

[10]The other defendants are Donna Shalala, the Secretary of Health and Human Services, John J. Callahan, the Acting Commissioner of the Social Security Administration, and Daniel Glickman, the Secretary of Agriculture.

[11]There were four additional counts in the complaint. However, none of those counts are involved in this appeal, which concerns only the district court's dismissal of and entry of final judgment as to Count 1 of the complaint.

court granted the defendants' motion to dismiss and issued a final judgment of dismissal as to Count 1 of the complaint pursuant to Fed.R.Civ.P. 54(b). The plaintiffs appealed that final judgment. We have jurisdiction under 28 U.S.C. § 1291.

## II. DISCUSSION

The plaintiffs raise two contentions on appeal. First, they contend that the district court should have applied a heightened level of scrutiny, such as the strict scrutiny test, instead of the rational basis test, in assessing the constitutionality of 8 U.S.C. § 1612. Second, they contend that, even if the district court was correct that the rational basis test is the applicable one, it erred in concluding that § 1612 satisfied even that minimal level of scrutiny. We will address each contention in turn, applying a *de novo* standard of review. *See, e.g., F.C.C. v. Beach Communications, Inc.,* 508 U.S. 307, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)(de novo standard applies to determination of the constitutionality of a statute).

### A. WHETHER RATIONAL BASIS SCRUTINY APPLIES IN ASSESSING THE CONSTITUTIONALITY OF 8 U.S.C. § 1612

In *Mathews v. Diaz,* 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976), the Supreme Court considered a Fifth Amendment equal protection challenge to a federal statute which, like 8 U.S.C. § 1612, discriminated among aliens by granting welfare benefits to specified categories of them but denying those benefits to all other aliens. The statute challenged in *Mathews* provided that the only aliens eligible for certain Medicare benefits on the same basis as citizens were those who were 65 or older, had been admitted for permanent residence, and had resided in the United States for at least five years. *See Mathews,* 426 U.S. at 69-70, 96 S.Ct. at 1886-87.

After noting that Congress is not required to treat citizens and aliens alike in the provision of welfare benefits, *id.* at 78-80, 96 S.Ct. at 1890-92, the Court narrowly framed the question raised by the plaintiffs' challenge to the statute: "The real question presented by this case is not whether discrimination between citizens and aliens is permissible; rather, it is whether the statutory discrimination *within* the class of aliens-allowing benefits to some aliens but not to others-is permissible." *Id.* at 80, 96 S.Ct. at 1892 (emphasis

6

in original). The Court answered that question by holding that the statutory discrimination between the classes of aliens in the provision of Medicare benefits was permissible.

Integral to the *Mathews* decision was the Court's holding concerning the level of scrutiny applicable to a federal statute that discriminates among aliens in the provision of welfare benefits. About that, the Court wrote:

> For reasons long recognized as valid, the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government. Since decisions in these matters may implicate our relations with foreign powers, and since a wide variety of classifications must be defined in the light of changing political and economic circumstances, such decisions are frequently of a character more appropriate to either the Legislature or the Executive than to the Judiciary.... Any rule of constitutional law that would inhibit the flexibility of the political branches of government to respond to changing world conditions should be adopted only with the greatest caution. *The reasons that preclude judicial review of political questions also dictate a narrow standard of review of decisions made by the Congress or the President in the area of immigration and naturalization.*

*Id.* at 81-82, 96 S.Ct. at 1892 (emphasis added). The Court defined the scope of that "narrow standard of review" as follows:

> Since it is obvious that Congress has no constitutional duty to provide *all aliens* with the welfare benefits provided to citizens, the party challenging the constitutionality of the particular line Congress has drawn has the burden of advancing principled reasoning that will at once invalidate that line and yet tolerate a different line separating some aliens from others.

*Id.* at 82, 96 S.Ct. at 1892-93 (emphasis in original). Applying that standard to the lines Congress had drawn in making only certain aliens eligible for Medicare benefits, the Court concluded that the classifications were constitutionally permissible because they were not "*wholly irrational.*" *Id.* at 83, 96 S.Ct. at 1893 (emphasis added). Although the Court did not actually use the phrase "rational basis scrutiny" to describe its "narrow standard of review," it did apply as the decisional criterion a "wholly irrational" standard, *id.,* and that is merely another way of stating the rational basis test. Neither party in this case contends there is any difference between a statute lacking a rational basis and being wholly irrational, and we perceive none.

Although the strict scrutiny standard does apply to Fourteenth Amendment equal protection challenges to a *state's* classification of aliens, *see Graham v. Richardson,* 403 U.S. 365, 372, 91 S.Ct. 1848,

7

1852, 29 L.Ed.2d 534 (1971), the *Mathews* Court firmly rejected the argument it also applies to a Fifth Amendment challenge to Congress' classification of aliens. The Court explained that "the Fourteenth Amendment's limits on state powers are substantially different from the constitutional provisions applicable to the federal power over immigration and naturalization." *Mathews,* 426 U.S. at 86-87, 96 S.Ct. at 1895. That is so, because "it is the business of the political branches of the Federal Government, rather than that of ... the States ... to regulate the conditions of entry and residence of aliens. The equal protection analysis also involves significantly different considerations because it concerns the relationship between aliens and the States rather than between aliens and the Federal Government." *Id.* at 84-85, 96 S.Ct. at 1893-94. Thus, the Court concluded, there is no "political hypocrisy" in applying strict scrutiny to a state's classification of aliens, but the considerably narrower "wholly irrational" or rational basis test to Congress' classification of aliens. *Id.* at 86-87, 96 S.Ct. at 1895.

Faced with the tight fit between the holding in *Mathews* and the issue before us, the plaintiffs offer six arguments in support of their position that *Mathews* nonetheless does not control and we should apply heightened or strict scrutiny in assessing the constitutionality of 8 U.S.C. § 1612. We find none of them persuasive. First, they argue that the rational basis standard used by the Supreme Court in *Mathews* applies only to federal statutes that discriminate within the class of aliens generally, while a tougher standard applies when the discrimination is between aliens on the one hand and citizens on the other. This distinction is critical, they say, because, unlike the statute challenged in *Mathews,* 8 U.S.C. § 1612 discriminates between aliens and citizens instead of merely within the class of aliens.

We find this argument unpersuasive because its central premise that § 1612 discriminates against aliens generally instead of within the class of aliens is belied by § 1612's plain language. As we have discussed, § 1612 provides that fourteen categories of aliens are eligible for SSI or food stamps, or both, while all other aliens are ineligible. By providing that some aliens are eligible for those benefits while others are not, § 1612 is a statute that discriminates among categories of aliens instead of against aliens generally; in

8

that respect, it is like the statute the Court subjected to rational basis scrutiny in *Mathews*. In that case, as in this one, some aliens were eligible under the statute and others were not.

The plaintiffs next argue that, even assuming 8 U.S.C. § 1612 does discriminate among aliens instead of against aliens generally, it differs from the statute in *Mathews* because § 1612 lacks a "principled basis" for distinguishing among aliens. The plaintiffs point out that the statute at issue in *Mathews* limited Medicare benefits to aliens who had five years of lawful residency in the United States. Noting that this five year period mirrors the time period an alien must wait before seeking naturalization, they argue that the *Mathews* statute's principled basis for distinguishing among aliens was that aliens "who are most like citizens qualify. Those who are less like citizens do not." *Mathews,* 426 U.S. at 83, 96 S.Ct. at 1893. According to the plaintiffs, the fourteen categories Congress defined in § 1612(a)(2) do not distinguish among aliens on a principled basis.

This second argument fails to address the relevant issue. Instead of discussing whether rational basis scrutiny applies to federal statutes that draw distinctions among aliens in the provision of welfare benefits, it jumps ahead to the issue of whether the distinctions in § 1612 have principled bases, and argues that they do not because they differ from the distinctions drawn by the statute examined in *Mathews*. However, whether there are principled bases for § 1612's distinctions is not properly addressed until the level of scrutiny is settled. On this point, as we have explained, *Mathews* holds that federal statutes which discriminate among aliens in the provision of welfare benefits are subject to rational basis scrutiny. Moreover, nothing in *Mathews* indicates that the Court meant to hold that the only statutes subject to rational basis scrutiny are those that are based on the same distinguishing factor used in that statute, i.e., length of residency. The fact that the specific classifications of aliens in *Mathews* involved subgroups of aliens different from the fourteen categories specified in § 1612(a)(2) has no bearing on the deference owed to Congress' decisions about immigration matters. *See Mathews,* 426 U.S. at 84, 96 S.Ct. at 1893-94 ("[I]t is the business of the political

9

branches of the Federal Government, rather than that of ... the Federal Judiciary, to regulate the conditions of entry and residence of aliens.").

Third, the plaintiffs argue that heightened scrutiny is called for in reviewing 8 U.S.C. § 1612 because "they have a constitutionally protected interest in continuing to receive the essential life-sustaining benefits" provided by SSI and food stamps. They also assert that "numerous Supreme Court decisions have acknowledged" that right. The plaintiffs are wrong. No Supreme Court decision has held that anyone, alien or citizen, has a right to welfare benefits. Perhaps what plaintiffs mean to argue is that those receiving welfare benefits have a property interest in the benefits, which cannot be taken away without due process. If that is the argument, it, too, fails to establish that a heightened standard of review applies. *Mathews* stands for the proposition that statutes which discriminate within the class of aliens comport with the Due Process Clause of the Fifth Amendment (and the equal protection principles it incorporates) so long as they satisfy rational basis scrutiny. Moreover, the Supreme Court has explained that "a welfare recipient is not deprived of due process when the legislature adjusts benefit levels.... [T]he legislative determination provides all the process that is due...." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 432-433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982).

Fourth, the plaintiffs argue that the deferential rational basis test only applies to statutes affecting aliens that were enacted pursuant to Congress' sovereign power over immigration, a power conferred by Article 1, § 8 of the Constitution. In their view, that sovereign immigration power extends only to legislation affecting aliens' ability to enter and exit the United States and the terms of their naturalization. According to them, 8 U.S.C. § 1612 falls outside that power because it is not a provision addressing the entry, exit, and naturalization of aliens. Because § 1612 was not passed pursuant to Congress' sovereign immigration power, the argument concludes, the strict scrutiny that applies to a state's classification of aliens should apply to this federal statute as well.

10

That argument is foreclosed, at least in this case, by *Mathews*. The Court rejected in *Mathews* the narrow view of Congress' sovereign immigration power advanced by the plaintiffs in this case. Broadly defining the scope of Congress' sovereign power over immigration, the Court stated that "the responsibility for regulating the *relationship* between the United States and our alien visitors has been committed to the political branches of the Federal Government," *Mathews*, 426 U.S. at 81, 96 S.Ct. at 1892, (emphasis added), and that "it is the business of the political branches of the Federal Government, rather than that of ... the Federal Judiciary, to regulate the *conditions of* entry and *residence* of aliens." *Id.* at 84, 96 S.Ct. at 1893-94 (emphasis added). Not only that, of course, but *Mathews* specifically held a statute discriminating among aliens in the provision of Medicare, a form of welfare benefits, does lie within Congress' power "in the area of immigration and naturalization," and for that reason is subject to rational basis scrutiny. *Id.* at 82, 96 S.Ct. at 1892. As to that holding, it is impossible to distinguish § 1612, which also discriminates among aliens in the provision of welfare benefits, from the statute at issue in *Mathews*.

Contrary to another position of the plaintiffs, holding that rational basis scrutiny applies is not inconsistent with the dicta in *Jean v. Nelson,* 727 F.2d 957, 973 (11th Cir.1984), that some federal actions affecting aliens may fall "outside the plenary power to control immigration that justifies the extraordinary executive and congressional latitude in that area." While that dicta may, or may not, have some viability in other situations, it has none here; the holding of *Mathews*-not dicta but holding-is that the decision to discriminate among aliens in the provision of welfare benefits is a decision that lies within Congress' plenary power over immigration.

Fifth, the plaintiffs suggest that the Supreme Court's decision in *Hampton v. Mow Sun Wong,* 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976), requires that we apply heightened scrutiny in this case. It does not. In *Hampton,* the Court invalidated a rule promulgated by the federal Civil Service Commission which barred aliens from federal employment. The Court reasoned that "the Commission performs [the] limited and specific function [of] ... promot[ing] an efficient federal service" and therefore lacks authority

11

over immigration matters. *Id.* at 114, 96 S.Ct. at 1910. However, the Court expressly stated that "[w]e may assume ... that if Congress or the President had expressly imposed the citizenship requirement, it would be justified by the national interest in providing an incentive for aliens to become naturalized...." *Id.* at 105, 96 S.Ct. at 1906. Because *Hampton* did not deal with a Congressional enactment, it provides no support for the plaintiffs' position that rational basis scrutiny does not apply in this case.

Finally, the plaintiffs argue that 8 U.S.C. § 1612 must be subjected to heightened scrutiny because they would be severely harmed by losing their right to SSI and food stamps. In support of that argument, plaintiffs rely primarily on *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). In that case, the Court considered a Fourteenth Amendment equal protection challenge to a state law excluding illegal immigrant children from public education. Although noting that illegal aliens are not a suspect class and that education is not a fundamental right, the Court declined to apply rational basis scrutiny and instead required the state to show something more, the something more being that the law advanced some "substantial goal of the State." *Id.* at 224, 102 S.Ct. at 2398. The Court based its holding in part on the fact that the complete deprivation of such an important right as education would "impose[ ] a lifetime hardship on a discrete class of children not accountable for their disabling status." *Id.* at 223, 102 S.Ct. at 2398. The plaintiffs argue that *Plyler* 's heightened standard of review should apply here.

This argument, too, is meritless. *Plyler* is inapposite because it deals with a Fourteenth Amendment challenge to a *state's* classification of aliens. Nothing in *Plyler* even arguably suggests that a heightened level of scrutiny would have applied if the challenged statute had been enacted by Congress, i.e., that *Mathews* would not have controlled had the same classification been prescribed by a federal statute. Indeed, the *Plyler* Court specifically cited *Mathews* for the purpose of noting that the deference which extends to Congress' power to govern aliens' "admission to our Nation and *status* within our borders," *id.* at 225, 102 S.Ct. at 2399 (emphasis added), does not extend to a state's classification of aliens. *Plyler* is entirely consistent with *Mathews,* which noted that while strict scrutiny is applicable to a state's classification of aliens, it does not

12

apply to congressional classifications. *See Mathews,* 426 U.S. at 86-87, 96 S.Ct. at 1895 ("[T]he Fourteenth Amendment's limits on state powers are substantially different from the constitutional provisions applicable to the federal power over immigration and naturalization.").

In summary, *Mathews* is inescapably on point as to the level of scrutiny applicable in this case. It holds that a federal statute which discriminates among aliens in the provision of welfare benefits is subject only to rational basis scrutiny. In this case, the plaintiffs are challenging 8 U.S.C. § 1612, a federal statute which discriminates among aliens by providing that the fourteen categories of qualified aliens specified in § 1612(a)(2) are the only aliens eligible for SSI or food stamps, or both. *Mathews* dictates that we apply rational basis scrutiny to the classifications Congress has drawn in 8 U.S.C. § 1612, and we proceed to do so.

## B. WHETHER 8 U.S.C. § 1612 SATISFIES RATIONAL BASIS SCRUTINY

Under rational basis scrutiny, "a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity," and should be upheld "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe,* 509 U.S. 312, 319-320, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993). The Supreme Court has cautioned that "rational-basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.... [A] classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (internal citations and quotations omitted).

Moreover, the government need not come forward with evidence to justify the classification; instead the burden is on those challenging the legislation "to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record." *Id.* at 320-21, 113 S.Ct. at 2643 (internal citations and quotations omitted). Finally, "courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some

13

inequality. The problems of government are practical ones and may justify, if they do not require, rough accommodations-illogical, it may be, and unscientific." *Id.* at 321, 113 S.Ct. at 2643 (internal citations and quotations omitted).

In this case, we agree with the defendants that Congress' decision to reduce the number of aliens eligible for SSI and food stamps by providing that only the aliens in the fourteen categories specified in § 1612(a)(2) are eligible for those benefits is rationally related to the legitimate purpose of reducing the cost of those welfare programs. The plaintiffs do not contend that § 1612's limitations on the number of aliens eligible for those benefits will not achieve cost savings. Instead, they argue that cost savings is not a legitimate interest for Congress to pursue under its sovereign immigration power. That argument is foreclosed by *Mathews* where the Supreme Court recognized that one of Congress' purposes in restricting the number of aliens eligible for Medicare benefits was "to maintain[ ] the fiscal integrity of the Medicare Part B program." *Mathews,* 426 U.S. at 83 n. 22, 96 S.Ct. at 1893 n. 22. By upholding the exclusion of aliens from Medicare benefits for that purpose, the Court implicitly endorsed cost considerations as a legitimate interest for Congress to consider in exercising its immigration powers. Part and parcel of Congress' power to regulate immigration is the power to control the effects of immigration, one of which is the cost it imposes on the nation's welfare system. Where Congress makes a judgment that immigration is creating, or adding to, financial burdens, it lies within Congress' plenary sovereign power over immigration to take action to alleviate such burdens.[12]

However, the fact that denying all aliens, except those identified in § 1612(a)(2), SSI and food stamp benefits is rationally related to the legitimate purpose of achieving cost savings in those benefit programs does

---

[12]In light of our conclusion that § 1612's limitation on the number of aliens eligible for SSI or food stamps is rationally related to achieving cost savings in those programs, we have no occasion to consider whether Congress' decision to impose that limitation is rationally related to other legitimate purposes or to exhaustively catalogue every conceivable legitimate purpose to which the statute could be rationally related. *See Heller,* 509 U.S. at 320, 113 S.Ct. at 2642 (Under rational basis scrutiny, "a classification must be upheld ... if there is *any* reasonably conceivable state of facts that could provide a rational basis for the classification." (emphasis added)).

not end our inquiry into whether § 1612 satisfies rational basis scrutiny. The plaintiffs also contend that there is no rational basis for Congress' decision to draw a line extending SSI or food stamps, or both, to aliens who fall into one or more of the fourteen eligible categories while denying those benefits to all other aliens. Because "Congress has no constitutional duty to provide *all aliens* with the welfare benefits provided to citizens," the plaintiffs, in order to prevail on that argument, have "the burden of advancing principled reasoning" that will both (1) "invalidate [the] line" Congress drew by showing the fourteen categories Congress established for eligibility are "wholly irrational," and (2) "tolerate a different line separating some aliens from others." *Mathews,* 426 U.S. at 82, 96 S.Ct. at 1892-93 (emphasis in original).

The plaintiffs have failed to meet that burden in this case. A category by category examination reveals that none of the fourteen categories Congress established is wholly irrational. To begin with, three of the categories extend benefits to aliens who have made special contributions to this country. Those categories consist of aliens who have substantially assisted our nation's economy by working for at least 40 quarters (10 years), aliens who are veterans or active military personnel, and Hmong or Highland Laotian aliens who provided aid to the United States during the Vietnam era. *See* § 1612(a)(2)(B), (C), (K). Certainly, it is not wholly irrational for Congress to extend welfare benefits to such aliens, either to reward them for their special contributions to the United States or to encourage other aliens to make contributions of a similar nature, or for both reasons.

Congress could have concluded that aliens in five of the other categories—refugees, asylees, aliens whose deportation has been withheld because of fear of persecution, certain Cuban or Haitian entrants, and Amerasian immigrants, *see* § 1612(a)(2)(A)(i)-(v)—are seeking refuge in the United States because of especially trying political, social, or economic circumstances in their native countries. Extending welfare benefits to those aliens is not wholly irrational; it is rationally related to the humanitarian purpose of aiding aliens fleeing such difficult conditions.

15

Three of the remaining categories consist of aliens who both were lawfully residing in the United States on August 22, 1996, and who also have some trait—blindness or disability, old-age, youth—which Congress could have concluded makes them particularly vulnerable to poverty. *See* § 1612(a)(2)(F), (I), (J). It is not wholly irrational for Congress to provide these aliens with welfare assistance in light of their vulnerability.

As for Congress' decision to extend benefits to especially vulnerable aliens only if they were lawfully residing in the United States as of August 22, 1996, the day the Welfare Reform Act was enacted, that is not "wholly irrational" either. Congress could have rationally imposed that cutoff date to deter future immigration by those seeking access to welfare benefits. In addition, the rationality of a cutoff date, indeed the necessity of having one, flows from the fact that the funds available for welfare programs are not unlimited. The fact that cutoff dates inevitably lead to persons "who have an almost equally strong claim to favored treatment be[ing] placed on different sides of the [eligibility] line" is not enough to make such a classification irrational any more than the necessity of "drawing lines for federal tax purposes" is irrational. *Mathews* 426 U.S. at 83, 96 S.Ct. at 1893. In the matter of drawing lines, judicial deference to congressional judgment is particularly appropriate, because the "differences between the eligible and the ineligible are differences in degree rather than differences in the character of their respective claims." *Id.* at 83-84, 96 S.Ct. at 1893.

We have covered eleven of the fourteen categories of aliens excepted from ineligibility. One of the remaining categories consists of lawfully residing aliens who were receiving SSI benefits on August 22, 1996, the day the Welfare Reform Act was enacted; they remain eligible for that type of benefit. *See* § 1612(a)(2)(E). It is not wholly irrational for Congress to have decided that it would upset expectations and reliance interests more to cutoff lawfully residing aliens who were actually receiving SSI benefits when the reform legislation was enacted than it would to deny those benefits to aliens who had not been receiving them.

Congress also decided to continue to extend SSI benefits to aliens who are receiving benefits "for months after July 1996 on the basis of an application filed before January 1, 1979" and "with respect to whom the Commissioner of Social Security lacks clear and convincing evidence that such [aliens are] ineligible for such benefits as a result" of the eligibility changes instituted by the Welfare Reform Act. § 1612(a)(2)(H). It is not wholly irrational for Congress to have concluded that administrative and litigation costs would be saved by continuing to provide such aliens with benefits.

We turn to the last category for discussion. Congress decided to provide benefits to aliens who are members of an Indian tribe or are American Indians born in Canada. *See* § 1612(a)(2)(G) That decision was not "wholly irrational" given the historically unique relationship of Indians to this country. *See* 25 U.S.C. § 450a(b) (recognizing "the Federal Government's unique and continuing relationship with and responsibility to the Indian people"). *See also Akins v. Saxbe,* 380 F.Supp. 1210, 1219-20 (D.Me.1974) (recognizing Congressional interest in preserving aboriginal rights of American Indians to move freely across territories originally occupied by them).

Plaintiffs have failed to show that Congress acted in a wholly irrational manner in regard to any of the fourteen categories it established in § 1612(a)(2). They have also failed to suggest a principled basis for prescribing a different standard of eligibility than the standards selected by Congress. Their request that we enjoin enforcement of § 1612 is nothing more than an invitation for us to substitute our judgment for that of Congress. We follow the Supreme Court in *Mathews* when we "decline the invitation" to do that. *Mathews,* 426 U.S. at 84, 96 S.Ct. at 1893.

Finally, we reject the plaintiffs' contention that the Supreme Court's decisions in *United States Dept. of Agric. v. Moreno,* 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973), and *Romer v. Evans,* 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996), somehow compel us to conclude that § 1612 fails rational basis scrutiny. *Moreno* is inapposite because, as the Supreme Court pointed out in *Mathews,* "[n]o question involving alienage was presented in that case." *Mathews,* 426 U.S. at 87, 96 S.Ct. at 1895.

As for *Romer,* the plaintiffs point to that case's statement that a statute fails rational basis scrutiny if it cannot be explained by "anything but animus toward the class that it affects." *Romer,* 517 U.S. at 632, 116 S.Ct. at 1627. They argue that Congress' decision to deny SSI and food stamps to aliens other than those specified in § 1612(a)(2) cannot be explained by anything but animus. We are unconvinced. As we have explained, there are rational bases for Congress' decision to extend benefits only to the specified categories of aliens. More fundamentally, the plaintiffs' animus argument ignores the Supreme Court's statement in *Mathews* that "[t]he fact that an Act of Congress treats aliens differently from citizens does not in itself imply that such disparate treatment is 'invidious.' " *Mathews,* 426 U.S. at 80, 96 S.Ct. at 1891. Here, the plaintiffs position that § 1612 is animus-based or "invidious" discrimination is grounded on nothing more than the fact that it treats some aliens differently from other aliens and from citizens, the very thing *Mathews* held was insufficient.

### III. CONCLUSION

Because we conclude that rational basis scrutiny applies to 8 U.S.C. § 1612 and that the classifications drawn in § 1612 satisfy such scrutiny, the district court's judgment is AFFIRMED.