[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 20, 2003
THOMAS K. KAHN
CLERK

_____

No. 02-15545

_____

D. C. Docket No. 01-00068-CV-WCO-2

COLEMAN JACKSON,

Petitioner-Appellant-
Cross-Appellee,

versus

STATE BOARD OF PARDONS AND PAROLES,
DEPARTMENT OF OFFENDER REHABILITATION
OF THE STATE OF GEORGIA,

Respondents-Appellees-
Cross-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(May 20, 2003)

Before ANDERSON and WILSON, Circuit Judges, and OWENS*, District Judge.

_____

*Honorable Wilbur D. Owens, Jr., United States District Judge for the Middle District of Georgia, sitting by designation.

WILSON, Circuit Judge:

Coleman Jackson appeals the district court's order granting in part and denying in part his motion for attorney's fees and his supplemental application for attorney's fees pursuant to 42 U.S.C. § 1988(b), and the Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e(d). Jackson contends that § 1997e(d) does not govern his motion for attorney's fees and his supplemental application for attorney's fees, because his 42 U.S.C. § 1983 action challenged the length of his confinement and not "prison conditions" within the meaning of § 1997e(a). Alternatively, he contends that § 1997e(d) violates his right to equal protection under the due process clause of the Fifth Amendment.[1] The State Board of Pardons and Paroles cross-appeals, contending that the court erroneously awarded Jackson fees-on-fees, or attorney's fees incurred in the course of litigating his petition for attorney's fees. These three arguments present issues of first impression in this Circuit. For the reasons set forth below, we affirm.

BACKGROUND

---

[1]Although "the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is so unjustifiable as to be violative of due process." *United States v. Perez-Hernandez*, 672 F.2d 1380, 1385 (11th Cir. 1982) (per curiam) (internal quotation marks omitted). Therefore, "a classification [that] is invalid under the Equal Protection Clause of the Fourteenth Amendment . . . is also invalid under the Due Process Clause of the Fifth Amendment." *Id.* (internal quotation marks omitted).

On August 4, 1999, Jackson was convicted of aggravated assault and sentenced to twenty years of imprisonment with five years to serve in prison and fifteen years of probation.[2] As of August 25, 1996, the date Jackson committed the assault, a prisoner convicted of aggravated assault was required to serve a minimum of one-third of his prison term before becoming eligible for a parole hearing before the board. *See* O.C.G.A. § 42-9-45(f). On December 9, 1997, however, the board amended its policy to provide that a prisoner convicted on or after January 1, 1998 of certain crimes, including aggravated assault, must serve a minimum of ninety percent of his term before becoming eligible for a parole hearing. The board applied its ninety-percent policy retroactively – that is, the board applied the new policy to all convictions entered on or after January 1, 1998 even if the underlying criminal conduct occurred before January 1, 1998. Thus, under the new policy, the board postponed the date of Jackson's initial parole eligibility hearing.

After his requests to reconsider his parole eligibility were denied twice by the board and once by Georgia's Superior Courts Sentence Review Panel, Jackson filed a joint motion for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and a complaint for damages pursuant to § 1983. He alleged that by applying the new

_____

[2]Jackson did not appeal his conviction and sentence.

3

policy to his offense the board retroactively increased his punishment in violation of the Ex Post Facto Clause of the United States Constitution. The magistrate judge recommended that the district court dismiss his habeas corpus petition without prejudice for lack of exhaustion of administrative remedies, dismiss his claim for damages under § 1983, and permit his claim for equitable relief under § 1983 to proceed. Jackson subsequently filed objections to the report and recommendation and incorporated a motion for equitable judgment therein.

The district court adopted the magistrate judge's report and recommendation and, after conducting an evidentiary hearing, granted Jackson's motion for equitable judgment, permanently enjoined the board from enforcing the new policy against Jackson, and ordered the board to provide Jackson with an initial parole eligibility hearing within forty-five days of the order. As a result, the board held a hearing and subsequently notified the court that it granted Jackson parole.[3]

Thereafter, pursuant to § 1988(b), Jackson filed the instant motion for attorney's fees in the amount of $34,875 and costs in the amount of $335.21, for a total award of $35,210.21. The board objected to his motion and asserted that because Jackson filed a § 1983 claim "with respect to prison conditions," 42

---

[3]The board also announced its intent to review the parole eligibility of 2200 similarly situated prisoners throughout Georgia.

4

U.S.C. § 1997e(a), the motion for attorney's fees and costs should be governed by § 1997e(d) of the PLRA.[4] Thereafter, Jackson filed a reply brief and a supplemental application for attorney's fees incurred while litigating the underlying motion in the amount of $2375.

The district court concluded that (1) § 1997e governed Jackson's underlying § 1983 claim and thus his motion for attorney's fees, because the underlying claim challenged "prison conditions" within the meaning of § 1997e(a); (2) § 1997e(d)'s fees restrictions do not violate the equal protection component of the Fifth Amendment; and (3) § 1997e(d) permits a prevailing plaintiff to recover fees-on-fees. Thus, pursuant to § 1988 and § 1997e(d), the court granted in part and denied in part Jackson's motion for attorney's fees and costs and his supplemental application for attorney's fees.[5] Jackson appeals the court's application of § 1997e(d) to his motion for attorney's fees and his supplemental application for attorney's fees,[6] and the board cross-appeals, challenging Jackson's supplemental attorney's fees award as impermissible fees-

_____

[4]The board raised the applicability of the PLRA to this litigation for the first time in its objection to Jackson's motion.

[5]Specifically, the court awarded Jackson attorney's fees in the amount of $9194.82, and costs in the amount of $113.96, for a total award of $9308.78.

[6]Jackson does not appeal the district court's award of costs.

on-fees. *See id.* § 1997e(d)(1)(A) (prohibiting attorney's fees that are not "directly and reasonably incurred in proving an actual violation of the plaintiff's rights").

## DISCUSSION

### I. Applicability of § 1997e(d)[7]

Under § 1988(b), a district court may, in its discretion, award reasonable attorney's fees to a successful § 1983 plaintiff. *See id.* § 1988(b).[8] Accordingly, neither party disputes that, as a successful § 1983 plaintiff, Jackson may receive reasonable attorney's fees under § 1988. *See id.* The parties disagree, however, on the applicability of § 1997e(d) to Jackson's underlying § 1983 claim and thus his motion for attorney's fees. *See id.* § 1997e(d)(1) (restricting attorney's fees awards authorized under § 1988 "[i]n any action brought by a prisoner"). Jackson contends that § 1997e(d) is not applicable to his motion for attorney's fees, because his § 1983 action challenged the length of his confinement and not "prison conditions" within the meaning of § 1997e(a). The board alleges that because Jackson's § 1983 action was "brought by a prisoner," § 1997e(d) is applicable to his motion for attorney's fees.

---

[7]"We review *de novo* issues of statutory interpretation." *United States v. Fischer*, 168 F.3d 1273, 1276 n.7 (11th Cir. 1999), *aff'd*, 529 U.S. 667 (2000).

[8]Section 1988(b) provides in relevant part that "[i]n any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title, the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).

"We begin our construction of section 1997e[(d)] where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision."[9] *Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000) (en banc), *cert. denied*, 532 U.S. 1065 (2001). Section 1997e(d) provides,

> (1) In *any action brought by a prisoner* who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under [42 U.S.C. §] 1988 . . ., such fees shall not be awarded, except to the extent that –
> (A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 . . . and
> (B)(i) the amount of the fee is proportionately related to the court ordered relief for the violation; or
> (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.

42 U.S.C. § 1997e(d)(1)(A)–(B) (footnotes omitted) (emphasis added). Here, we must determine the meaning of the phrase "any action brought by a prisoner" to decide whether § 1997e(d) applies to Jackson's underlying § 1983 action and thus his motion for attorney's fees and his supplemental application for attorney's fees.

---

[9]As we frequently have stated, "[w]hen the import of words Congress has used is clear . . . we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language." *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001) (alterations in original) (internal quotation marks omitted). Moreover, "we must presume that Congress said what it meant and meant what it said." *Id.* (internal quotation marks omitted).

"In the absence of a statutory definition of a term, we look to the common usage of words for their meaning." *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001) (internal quotation marks omitted). Often, courts look to dictionary definitions to ascertain the common usage of words. *Id.* at 1223. The dictionary definition of the word "action" is "a legal proceeding by which one seeks to have a wrong put right; lawsuit." *Webster's New World College Dictionary* 14 (Michael Agnes et al. eds., 4th ed. 1999); *see also Black's Law Dictionary* 28 (Bryan A. Garner et al. eds., 7th ed. 1999) (defining "action" as "[a] civil or criminal judicial proceeding").

Furthermore, Congress chose "an expansive modifier – the word 'any' – instead of a restrictive one." *CBS Inc.*, 245 F.3d at 1223; *see also United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning . . . ."). We previously stated that "the adjective any is not ambiguous; it has a well-established meaning." *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1337 (11th Cir. 1999) (en banc) (internal quotation marks omitted). Therefore, without any language to limit the significance of this modifier, "any means all." *CBS Inc.*, 245 F.3d at 1223 (internal quotation marks omitted). Hence, the phrase "any action" covers a lawsuit challenging the length of an inmate's confinement.

8

Additionally, we have held that the term "brought," as used in subsections (a) and (e) of § 1997e, means filed. *See Harris*, 216 F.3d at 974 (interpreting the term "brought" as used in § 1997e(e)'s "[n]o federal civil action shall be brought" language to mean filed); *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999) (interpreting the term "brought" as used in § 1997e(a)'s "[n]o action shall be brought" language to mean filed). Normally, identical words that appear in various parts of the same act are meant to have the same meaning. *See Atl. Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932) ("[T]here is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning."). Thus, the term "brought" as used in § 1997e(d)'s "[i]n any action brought" language means filed. *See* 42 U.S.C. § 1997e(d)(1).

Finally, we need not resort to common usage to determine the meaning of the term "prisoner" in § 1997e(d), because Congress defined that term as it is used within § 1997e as follows: "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law." 42 U.S.C. § 1997e(h). As Jackson was convicted of aggravated assault and sentenced to twenty years of imprisonment, he is a prisoner within the meaning of § 1997e(h).

Therefore, it is apparent that § 1997e(d)'s phrase "any action brought by a prisoner" means all lawsuits that are filed by a prisoner and is not restricted to lawsuits challenging "prison conditions" that are filed by a prisoner. Accordingly, § 1997e(d) applies to Jackson's underlying § 1983 action and thus his motion for attorney's fees and his supplemental application for attorney's fees.[10]

## II. Equal Protection[11]

Jackson contends that § 1997e(d) violates his right to equal protection under the Fifth Amendment by restricting the attorney's fees awards of prisoners while

---

[10]The district court concluded that § 1997e(d) governed Jackson's underlying § 1983 action and his motion for attorney's fees, because the underlying action challenged "prison conditions" within the meaning of § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to *prison conditions* under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added).

Although Congress included the term "prison conditions" in three of § 1997e's subsections, *see id.* § 1997e(a), (c)(1), (f)(1), it did not include that term in the remaining subsections, *see id.* § 1997e(d)(1), (e), (g), (h). Clearly, Congress knew how to specify "prison conditions" and purposefully chose where to do so and where not to do so. *See In re Griffith*, 206 F.3d 1389, 1394 (11th Cir. 2000) (en banc) (noting that "[w]here Congress knows how to say something but chooses not to, its silence is controlling" (alteration in original) (internal quotation marks omitted)). As Congress did not specify "prison conditions" in the subsection addressed in this appeal, § 1997e(d), we render no decision as to whether Jackson's § 1983 claim challenges "prison conditions" within the meaning of § 1997e(a). Nevertheless, we affirm the district court's judgment, because § 1997e(d) applies to all lawsuits that are filed by a prisoner. *See Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 n.1 (11th Cir. 1999) (per curiam) ("[W]e may affirm the district court's judgment on any ground that finds support in the record" (internal quotation marks omitted).).

[11]"We review the constitutionality of a federal statute *de novo*." *United States v. Jackson*, 111 F.3d 101, 101 (11th Cir. 1997) (per curiam).

10

permitting other litigants to recover full attorney's fees awards.[12]  Although we

previously have not addressed the constitutionality of § 1997e(d), several of our

sister circuits have addressed this issue and found § 1997e(d) in its entirety, or its

various subsections, constitutional.  *See Foulk v. Charrier*, 262 F.3d 687, 704 (8th

Cir. 2001) (concluding that § 1997e(d)(2) survives rational basis review); *Walker

v. Bain*, 257 F.3d 660, 670 (6th Cir. 2001) (concluding the same), *cert. denied*, 535

U.S. 1095 (2002); *Hadix v. Johnson*, 230 F.3d 840, 847 (6th Cir. 2000)

(concluding that § 1997e(d)(3) survives rational basis review); *Boivin v. Black*,

225 F.3d 36, 46 (1st Cir. 2000) (concluding that § 1997e(d)(2) survives rational

basis review); *Madrid v. Gomez*, 190 F.3d 990, 995–96 (9th Cir. 1999) (finding

that § 1997e(d) passes constitutional muster).  *But see Collins v. Montgomery*

---

[12]Section 1997e(d) provides,

> (2) Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant.  If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.
> (3) No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of title 18 for payment of court-appointed counsel.
> (4) Nothing in this subsection shall prohibit a prisoner from entering into an agreement to pay an attorney's fee in an amount greater than the amount authorized under this subsection, if the fee is paid by the individual rather than by the defendant pursuant to section 1988.

42 U.S.C. § 1997e(d)(2)–(4).

*County Bd. of Prison Inspectors*, 176 F.3d 679, 686 (3d Cir. 1999) (en banc) (declining to rule upon the constitutionality of § 1997e(d)(3) because the court was divided equally on the issue).[13]  We conclude, like our sister circuits, that § 1997e(d) is constitutional.

Generally speaking, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate [governmental] interest."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).  The level of scrutiny is heightened, however, "[i]f a fundamental right or a suspect class is involved."  *Gary v. City of Warner Robins*, 311 F.3d 1334, 1337 (11th Cir. 2002).  As prisoners are not a suspect class, heightened scrutiny is not warranted on that basis.  *Rivera v. Allin*, 144 F.3d 719, 727 (11th Cir. 1998).  Jackson contends, however, that § 1997e(d)'s attorney's fees restrictions violate the fundamental right of access to the courts by discouraging attorneys from taking prisoners' civil rights cases.

Without question, "prisoners have a constitutional right of access to the courts."  *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  To have standing to seek

---

[13]While none of the courts of appeals that have addressed the constitutionality of § 1997e(d) have found it unconstitutional, one district court found § 1997e(d) unconstitutional. *See Johnson v. Daley*, 117 F. Supp. 2d 889, 893 (W.D. Wis. 2000) (finding no rational relationship between § 1997e(d)'s classification and the government's interests).

relief under this right, however, a plaintiff must show actual injury by "demonstrat[ing] that a nonfrivolous legal claim ha[s] been frustrated or . . . impeded." *Lewis v. Casey*, 518 U.S. 343, 353 (1996) (footnote omitted). As Jackson was represented by counsel and was successful in his § 1983 action, he does not have standing to seek relief under the right of access to the courts. *See Boivin*, 225 F.3d at 43 n.5 (noting that a prisoner who was represented by counsel and won his claim did not have standing to seek relief under the right of access to the courts). Thus, Jackson has not demonstrated a violation of a fundamental right, and, therefore, heightened scrutiny is not warranted on that basis.

As § 1997e(d) does not involve a suspect class nor infringe upon a fundamental right, we review its constitutionality under the rational basis test. *See Gary*, 311 F.3d at 1338. Under rational basis review, a classification within a statute "is accorded a strong presumption of validity," and we must uphold the statute "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 319–20 (1993) (internal quotation marks omitted). The government is not required to provide evidentiary support for its classifications and may rely upon conjecture. *Hadix*, 230 F.3d at 843. Thus, Jackson bears the heavy burden of "negati[ng] every conceivable basis which might support [the statute], whether or

13

not the basis has a foundation in the record." *Rodriguez ex rel. Rodriguez v. United States*, 169 F.3d 1342, 1350 (11th Cir. 1999) (internal quotation marks omitted).

Under this highly deferential standard, we conclude that § 1997e(d) survives rational basis review. Apparently, by enacting § 1997e(d), Congress intended to decrease "marginal or trivial lawsuits."[14] *Hadix*, 230 F.3d at 845; *see also Walker*, 257 F.3d at 668–69; *Boivin*, 225 F.3d at 45; *Madrid*, 190 F.3d at 996. Before the fee cap, there was nothing to dissuade attorneys from "adopt[ing] a 'shotgun' approach, filing numerous claims in the hopes that at least a minor violation would likely be found, [thus] assuring the recovery of attorneys fees." *Hadix*, 230 F.3d at 845. By lowering the fees recoverable for a successful claim, "a rational attorney [is likely to] demand a greater likelihood of success before taking a prisoner's case." *Id.*

Additionally, by decreasing frivolous claims, "Congress could also . . . be seeking to protect the state and federal treasuries, from which the majority of

---

[14]It is irrelevant that Congress did not specify its purpose in making the classification. *See Heller*, 509 U.S. at 320 ("[A] legislature that creates these categories need not actually articulate at any time the purpose or rationale supporting its classification" (internal quotation marks omitted).); *see also Boivin*, 225 F.3d at 44 n.6 (citing the legislative history of the PLRA as evidence of Congress's goals); *Harris*, 216 F.3d at 977 & n.5 (citing floor statements of the PLRA's principal architects to determine Congress's intent because the PLRA was enacted "as a rider to an appropriations bill" (internal quotation marks omitted)).

prisoner civil rights awards are paid." *Id.* In light of the "shotgun" approach many attorneys utilized before the fee cap, "Congress could have rationally concluded that [such] prisoner civil rights litigation leads to attorney fees which are often disproportionate to the harm or injury. Thus, by reducing the number of marginal, albeit meritorious claims, some government resources would be preserved." *Walker*, 257 F.3d at 669.

As Jackson has failed "to negat[e] every conceivable basis which might support" § 1997e(d), we must conclude that § 1997e(d) survives rational basis review. *Rodriguez*, 169 F.3d at 1350 (internal quotation marks omitted).[15]

### III. Fees-on-Fees[16]

On cross-appeal, the board contends that the district court erred in awarding Jackson fees-on-fees, because the fees-on-fees were not "directly and reasonably incurred in proving an actual violation" of Jackson's rights. 42 U.S.C. §

---

[15]Jackson also contends that § 1997e(d)'s application has a disparate impact on African American males, because they represent the majority of persons incarcerated in our prisons. As Jackson has not demonstrated any evidence of discriminatory intent, we find that this claim lacks merit. *See Parks v. City of Warner Robins*, 43 F.3d 609, 616 (11th Cir. 1995) (requiring "[p]roof of racially discriminatory intent or purpose . . . to show a violation of the Equal Protection Clause" (internal quotation marks omitted)). He further contends that § 1997e(d) violates his right to counsel under the Sixth Amendment. As this issue was not raised before the district court, we decline to address it on appeal. *See United States v. S. Fabricating Co.*, 764 F.2d 780, 781 (11th Cir. 1985) (per curiam) ("Generally, an appellate court will not consider a legal issue or theory raised for the first time on appeal.").

[16]"We review an award of attorney's fees by the district court only for an abuse of discretion." *Johnson v. Breeden*, 280 F.3d 1308, 1326 (11th Cir. 2002).

1997e(d)(1)(A).  Although we have not addressed whether § 1997e(d)(1) permits a prevailing § 1983 plaintiff to recover fees-on-fees, the Third and Fifth Circuits have concluded that fees-on-fees are recoverable under § 1997e(d)(1).  *See Volk v. Gonzalez*, 262 F.3d 528, 536 (5th Cir. 2001); *Hernandez v. Kalinowski*, 146 F.3d 196, 200–01 (3d Cir. 1998).  We agree.

Section 1988(b) permits reasonable attorney's fees "[i]n any action or proceeding to enforce a provision of section[] . . . 1983," 42 U.S.C. § 1988(b), and § 1997e(d)(1)(A) permits attorney's fees for "proving an actual violation of the plaintiff's rights," *id.* § 1997e(d)(1)(A).  It is well-settled that fees-on-fees are permitted under § 1988 even though Congress did not explicitly provide for fees-on-fees therein.  *Hernandez*, 146 F.3d at 200; s*ee also Jonas v. Stack*, 758 F.2d 567, 568 (11th Cir. 1985) ("[A] prevailing party's counsel is entitled to reasonable compensation when he litigates his own claim for entitlement to § 1988 fees.").  As Congress has not "express[ed] an intent to change th[is] established construction," we will continue to follow that construction.  *Volk*, 262 F.3d at 536 (internal quotation marks omitted).

Therefore, as § 1988(b)'s language permitting fees-on-fees does not differ significantly from § 1997e(d)(1)(A)'s language, we join our sister circuits in

concluding that fees-on-fees are recoverable under § 1997e(d). *See id.*;

*Hernandez*, 146 F.3d at 200–01.

## CONCLUSION

Thus, we conclude that § 1997e(d) applies to Jackson's underlying § 1983 action and thus his motion for attorney's fees and his supplemental application for attorney's fees. Furthermore, we find that § 1997e(d)'s attorney's fees restrictions survive rational basis review. Finally, we conclude that fees-on-fees are recoverable under § 1997e(d)(1)(A). Accordingly, we AFFIRM.